IN THE MATTER OF THE PETITION FOR
REINSTATEMENT TO THE BAR OF MARY-
LAND OF WILLIAM M. LOKER, JR.

[Misc. Docket (Subtitle BV) No. 5, September Term, 1977.]

*Decided July 26, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Wm. Aleck Loker* for William M. Loker, Jr.

*James A. Frost, Assistant Bar Counsel,* for Attorney Grievance Commission of Maryland.

SMITH, J., delivered the opinion of the Court.

We shall here decline to reinstate William M. Loker, Jr., to the Bar of this State.

In *In Re Raimondi and Dippel,* 285 Md. 607, 403 A.2d

1234 (1979), we have just reviewed the procedure and the law relative to reinstatement of a disbarred lawyer.

Loker was admitted to the Maryland Bar on November 13, 1947. He was disbarred on March 20, 1970, by the Circuit Court for St. Mary's County.[1] The details of the conduct which brought about this disbarment are set forth in *Loker v. State,* 2 Md. App. 1, 233 A. 2d 342 (1967), and *Loker v. State,* 250 Md. 677, 245 A. 2d 814 (1968), *cert. denied,* 393 U. S. 1082 (1969). He was convicted of embezzlement and grand larceny growing out of his service as treasurer of the municipality of Leonardtown. (He was also attorney and clerk to the town). The period covered by these defalcations appears to have been 12 years or longer. *See Loker v. State,* 2 Md. App. 17-19. Judge Orth said for the Court of Special Appeals, "The audit showed that during the period from the time [Loker] assumed his duties as treasurer to the time the new bookkeeping system was installed the receipts as reflected in the daily receipts journal exceeded the deposits in the town's bank accounts by $97,904.83." *Id.* at 17-18. As had the attorneys in *Raimondi and Dippel,* Loker has been granted a full pardon by the Governor.

The inquiry panel evaluated this case pursuant to the criteria set forth in *In re Barton,* 273 Md. 377, 379, 329 A. 2d 102 (1974), and repeated in *Raimondi and Dippel,* (1) the nature and circumstances of the original misconduct; (2) petitioner's subsequent conduct and reformation; (3) his present character; and (4) his present qualifications and competence to practice law. The panel said relative to the original misconduct:

> Loker's actions, over an extended period of time, represented the gravest form of professional misconduct.

> The misappropriation by an attorney of funds of others entrusted to his care, be the amount small or

---

1. Prior to the amendment of the BV rules effective November 2, 1970, discipline of attorneys was handled in the circuit courts of the the 23 counties of Maryland and in the Supreme Bench of Baltimore City.

large, is of great concern and represents the gravest form of professional misconduct. *Bar Association v. Marshall,* 269 Md. 510, 307 A. 2d 677 (1973). See also *Attorney Grievance Commission v. Andresen,* 281 Md. 152, 379 A. 2d 159 (1977).

The panel noted that attached to Loker's petition for reinstatement were "[v]oluminous testimonials to Loker's subsequent conduct, reformation and present character" and "[i]ncluded among these are letters of recommendation from almost all members of the St. Mary's County Bar, respected members of the business community, one member of the Clergy, and elected officials, including members of the State Legislature." In addition to these written testimonials, numerous witnesses testified at the hearing in favor of Loker's reinstatement. The panel said that if the testimonials and sworn testimony represented all the evidence pertinent to the issues of subsequent conduct, reformation and present character it "would have no difficulty in concluding that [Loker] has established by clear and convincing proof, that his subsequent conduct, reformation and present character represent no obstacle to his reinstatement." It questioned, however, the isolation of the Loker home from the possible claims of creditors. It had been owned by Loker and his wife as tenants by the entireties until just prior to his incarceration when it was transferred to his wife. The panel questioned his present employment at a salary of $125 per week, apparently believing that this was intended to insulate his wages from attachment by creditors.

Insofar as Loker's present qualifications and competence to practice law are concerned, the panel noted:

> Prior to his incarceration, Loker was one of the most able lawyers in Southern Maryland. Since then he has read the *Daily Record* and has attempted to keep abreast of changes in the law by reading Appellate Opinions and discussing the law with lawyers and judges. He has also assisted law graduates in their preparation for the Bar Examination.

The panel recommended against reinstatement, "find[ing] that Loker has not established, by clear and convincing proof, that his subsequent conduct and reformation, and his present character, justify reinstatement." As the basis for this conclusion it said:

> This Panel is quite favorably impressed with the voluntary testimonials submitted by many distinguished and respected persons who appear to be totally convinced that he has paid his debts to society, that he has reformed his character and is morally fit for reinstatement. He has shown great courage, strong character, and resoluteness in purpose by returning to his local community to regain his personal dignity and prove · his reformation.
>
> We are completely cognizant of, and in total accord with, the heartaches for a disbarred attorney and his family, and we share the belief of Judge Smith in a doctrine of forgiveness and brotherly love. See dissenting Opinion, *In Re Braverman,* 271 Md. 196, [213,] 316 A. 2d 246, 254 (1974).
>
> As forgiving as our dispositions may be, we are convinced that to some small extent Loker's arrangements to isolate the family home from the claims of creditors and to a much greater extent his continuing salary arrangements, which effectually remove his wages from claim of creditors, are indicative of insufficient reformation of character to recommend reinstatement, under the controlling guidelines of previous cases decided by the Maryland Court of Appeals.

The review board "concur[red] in and adopt[ed] the Inquiry Panel's recommendation that the Petition for Reinstatement should be denied . . . ."

We agree with the panel and the Review Board for much the same reasons set forth in our opinion in *Raimondi and Dippel.* There we referred to our repeated assertions that the

purpose of disbarment is not to punish the attorney, but to protect the public; that an application for reinstatement involves a new inquiry as to whether in the interval following the rendering of the judgment of disbarment the petitioner has become a proper person to be admitted as an attorney; and that since disbarment is not punishment, then due regard to the administration of justice does not permit disbarment and reinstatement to be made mere adjuncts to reform schools and parole systems. As in *Raimondi and Dippel,* the type of crime committed by Loker makes the original misconduct one of the most important of the criteria to be considered on his application for reinstatement. We noted in *Raimondi and Dippel* that the relation of the bar to the courts is a peculiar and intimate relationship; that the bar is an attaché of the courts; that the quality of justice dispensed by the courts depends in no small degree upon the integrity of its bar; and that an unfaithful bar may easily bring scandal and reproach to the administration of justice and bring the courts themselves into disrepute, citing *In re Cannon,* 206 Wis. 374, 383, 240 N. W. 441 (1932). We also noted relative to reinstatement, citing *In re Morrison,* 45 S.D. 123, 126, 186 N. W. 556 (1922), that a court should endeavor to make certain that it does not again put into the hands of an unworthy petitioner that almost unlimited opportunity to inflict wrongs upon society possessed by a practicing lawyer.

We said in *Raimondi and Dippel:*

> There may be a point in time when it is proper to reinstate to the practice of law even one who has committed a most heinous crime. We are unable to draw a precise line as to when that might be. We point out once again Judge Eldridge's observation for the Court in *Barton,* 273 Md. at 380, "[T]he more serious the original misconduct was, the heavier is the burden to prove present fitness for readmission to the bar."

> It may not have been so labeled, but what courts do when faced with any application for

reinstatement from a previously disbarred lawyer is to engage in a balancing process. On one side of the scale is placed the seriousness of the misconduct which produced disbarment and the court's duty to society at large to see that only those persons who are worthy of the faith and confidence of the general public are permitted to handle the affairs of others. In this regard, it must be remembered as Chief Justice Vinson said in *In Re Isserman,* 345 U. S. 286, 289, 73 S. Ct. 676, 97 L. Ed. 1013 (1953), *reversed on other grounds,* 348 U. S. 1, 75 S. Ct. 6, 99 L. Ed. 3 (1954), "There is no vested right in an individual to practice law. Rather there is a right in the Court to protect itself, and hence society, as an instrument of justice." On the other side are placed the subsequent conduct and reformation of such individual, his present character, his present qualifications and competence to practice law, and the fact that the very nature of law practice places an attorney in a position where an unprincipled individual may do tremendous harm to his client. In this balancing process consideration must be given to the length of time which has elapsed since disbarment. Also, it must not be forgotten that a disbarred attorney was previously found to possess good moral character. Otherwise, he would not have been admitted to practice law. Thus, either someone erred in the earlier evaluation of his character or the weakness of character producing the earlier misconduct previously failed to manifest itself. For this reason such an applicant must undergo an even more exacting scrutiny than he did earlier. In evaluating the statements from others as to the present good moral character of an applicant for readmission it must not be forgotten that a disbarred lawyer — like many people convicted of so-called "white-collar" crime — had earlier occupied a position in society where it is probable that testimonials as to his good moral character, similar to that elicited in connection

with his application for reinstatement, could have been obtained at any point in time prior to knowledge of his misconduct on the part of those attesting to his good character. [*Id.* 285 Md. at 617-18.]

We went on in *Raimondi and Dippel* to quote, as we have done a number of times in the past, from *In re Stump,* 272 Ky. 593, 114 S.W.2d 1094 (1938), where the court said concerning the petition for reinstatement of a disbarred attorney:

The ultimate and decisive question is always whether the applicant is now of good moral character and is a fit and proper person to be reintrusted with the confidences and privileges of an attorney at law. This question has a broader significance than its purely personal aspect. From time immemorial lawyers have in a peculiar sense been regarded as officers of the court. It is a lawyer's obligation to participate in upholding the integrity, dignity, and purity of the courts. He owes a definite responsibility to the public in the proper administration of justice. It is of utmost importance that the honor and integrity of the legal profession should be preserved and that the lives of its members be without reproach. The malpractice of one reflects dishonor not only upon his brethren, but upon the courts themselves, and creates among the people a distrust of the courts and the bar. [*Id.* at 598.]

We have referred numerous times in the past to the fact that misappropriation by an attorney of funds of others entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct. *See, e.g., Attorney Griev. Comm'n v. Andresen,* 281 Md. 152, 160, 379 A. 2d 159 (1977); *Bar Ass'n of Balto. City v. Carruth,* 271 Md. 720, 727, 319 A. 2d 532 (1974); *Bar Ass'n v. Marshall,* 269 Md. 510, 519, 307 A. 2d 677 (1973), and cases there cited. This was no isolated incident. As we

indicated at the outset, it was spread over a number of years and involved a substantial sum of money.

Balancing all of the factors we have mentioned and taking into consideration particularly the conduct for which Loker was disbarred and the time which has elapsed since then, we are unwilling to once again constitute him an officer of this Court, thereby placing him in a position where he may handle the affairs of others. Thus, his petition for reinstatement will be denied.

> *It is so ordered; petitioner shall pay all costs, including all costs of transcripts, pursuant to Maryland Rule BV15 b, c.*