477 A.2d 273

In the Matter of the Reinstatement to the Bar of Maryland of Ernest Neal CORY, Jr.

Misc. (Subtitle BV) No. 16, Sept. Term, 1982.

Court of Appeals of Maryland.

July 5, 1984.

178

Hal C.B. Clagett, Upper Marlboro, for petitioner.

Melvin Hirshman, Bar Counsel, Annapolis, for respondent.

Argued before COLE and RODOWSKY, JJ., and WEANT, GARRITY, BLOOM, GETTY and BELL, Associate Judges of the Court of Special Appeals, Specially Assigned.

RODOWSKY, Judge.

Ernest Neal Cory, Jr. has petitioned to be reinstated to the bar of this Court. He was suspended and later disbarred following his conviction by a jury on October 7, 1977 in the United States District Court for the District of Maryland on a number of charges which generally involved a species of mail fraud. We shall grant Cory's petition for the reasons hereinafter set forth.

Cory filed his petition on August 12, 1982. We referred it to Bar Counsel for investigation, to be followed by appropriate hearings before an inquiry panel and by recommendations from the Review Board. See Maryland Rule BV 14 d 2. The panel unanimously recommended reinstatement. The Review Board concluded otherwise. It was not persuaded that Cory had "met the heavy burden of overcoming the nature ... of the original misconduct" and it was concerned about his present competence to practice law. Some members of the Review Board expressed doubt that Cory, who was born April 21, 1914, was physically and mentally capable of resuming the practice of law. However the Review Board's recommendation, as interpreted by Bar Counsel, was that, if this Court were to conclude that Cory had met his burden, a condition of reinstatement should be that his practice be monitored for a time by some member of the bar.

■■■■ The factors we are to consider on a petition for reinstatement were listed in *In re Braverman,* 271 Md. 196, 199–200, 316 A.2d 246, 247 (1974). They are:

1. The nature and circumstances of the original misconduct;

2. The petitioner's subsequent conduct and reformation;

3. His present character; and

4. His present qualifications and competence to practice law.

*See also In re Siegel,* 294 Md. 635, 452 A.2d 414 (1982); *In re Barton,* 291 Md. 61, 432 A.2d 1335 (1981); *In re Loker,* 285 Md. 645, 403 A.2d 1269 (1979); *In re Raimondi and Dippel,* 285 Md. 607, 403 A.2d 1234 (1979), *cert. denied,* 444 U.S. 1033, 100 S.Ct. 705, 62 L.Ed.2d 669 (1980); Cohen, *Moral Fitness to Practice Law in Maryland—Admission, Disbarment and Reinstatement,* 13 Md.B.J. 34, 37 (Summer 1980). A petition for reinstatement will be granted only if there is a "clear and convincing showing of rehabilitation and of legal competence, borne out by an applicant's conduct over a long period of time." *Barton, supra,* 291 Md. at 67, 432 A.2d at 1338.

## A.

On November 24, 1975 a special federal grand jury indicted Governor Marvin Mandel, W. Dale Hess, Harry W. Rodgers, III (Harry), William A. Rodgers (William), Irvin Kovens and Cory on multiple counts of mail fraud in violation of 18 U.S.C. § 1341 and for violating the Organized Crime Control Act, 18 U.S.C. § 1961 *et seq.* The Government charged that the six defendants, at a time beginning after January 7, 1969 and before the spring of 1971, had devised a scheme to defraud the citizens of the State of Maryland and its governmental officials of their right to the faithful and unbiased services of Governor Mandel. The general theory of the indictment was that Governor Mandel had acted with intent to aid the financial interests of the codefendants relating to the Marlboro race-

track and other business entities while Hess, Harry and William had acted with intent to provide a flow of financial benefits to Mandel. This "corrupt relationship" was backed financially by Kovens. The indictment charged Cory with acting "with intent to conceal from all public and governmental awareness the true facts with respect to financial interests held, directly and indirectly, by the defendants" in business entities affected by the corrupt relationship. Twenty mailings were allegedly made in furtherance of the fraud scheme. Each mailing constituted a separate count and all defendants were convicted on fifteen of the mail fraud counts. The racketeering count on which Cory was convicted, together with Hess, Harry, William and Kovens, relied on the mail fraud violations to establish the pattern of racketeering activity. On appeal the convictions were initially vacated and remanded for a new trial as to all defendants by a divided panel of the Fourth Circuit. *See United States v. Mandel,* 591 F.2d 1347 (1979). On rehearing *en banc,* the convictions were affirmed by an evenly divided court. *United States v. Mandel,* 602 F.2d 653, *reh'g denied,* 609 F.2d 1076 (4th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

▮▮▮ Cory was suspended from the Maryland Bar by our order of December 1, 1977, based upon the trial court conviction. He was disbarred, by consent, on June 30, 1980. In matters of bar discipline, a final conviction is conclusive of guilt. *See Att'y Grievance Comm'n v. Mandel,* 294 Md. 560, 569, 451 A.2d 910, 914 (1982). The offense involves moral turpitude. *Id.* at 585, 451 A.2d at 922.

Cory's role in the crime was concealing beneficial ownership interests in Marlboro, a half-mile, former county fair racetrack. He had no substantial business or professional relationship with any of his co-defendants prior to the offense. His involvement grew out of an effort to sell, on behalf of a trust estate of which he was trustee, 7.5% of the stock of the corporation which owned Marlboro. An offer to Harry of that minority interest ultimately led to Hess'

arranging its sale to one Schwartz, a person whom the Government contended acted as a front for Kovens. Hess later asked Cory to negotiate the purchase of all of the remaining stock in Marlboro, which Cory accomplished. The purchase closed December 31, 1971. Cory knew that Hess, Harry and William beneficially acquired a portion of the total stock and he acted as "nominee" for them. In all of Marlboro's dealings with the Maryland Racing Commission and with the Maryland General Assembly between 1972 and 1974 the true owners of Marlboro were never revealed.[1] *See United States v. Mandel, supra,* 591 F.2d at 1355.

Petitioner attributes his criminal conduct to greed and stupidity. He received no fee for arranging acquisition of the Marlboro stock. He had hoped to be asked to serve as counsel to the purchasers in the sale transaction but another attorney was engaged. Cory did serve as corporate counsel and secretary. He became general manager of Marlboro and a member of its Board of Directors. As part of the consideration paid for his services he received about 5% of the stock of Marlboro. Marlboro and Bowie racetracks "merged" December 28, 1972. Cory's interest in Marlboro converted into about 1% of the corporation formed to control both tracks. The value of that interest does not appear in the record before us. It was forfeited to the United States, without contest by Cory, as a result of the racketeering conviction.

### B.

The next two factors under the *Braverman* analysis relate to the applicant's conduct subsequent to the offense and to his present character and reformation. The inquiry panel concluded that Cory's "present character is commend-

---

1. Chapter 311 of the Acts of 1974, effective July 1 of that year, amended Md.Code (1957, 1969 Repl.Vol.), Art. 78B, § 13 by expressly requiring that the beneficial owners of stock of corporations licensed to conduct horse racing be disclosed to the Racing Commission.

able" and that he "has undergone reformation . . . ." Bar Counsel tells us that he is "satisfied personally that Mr. Cory has made a reformation of his conduct" and Bar Counsel is "satisfied as to [Cory's] present character . . . ." The Review Board, in recommending rejection, did not point to any act or omission other than the criminal conviction itself to indicate present lack of good character.

As a result of Cory's indictment, conviction, suspension and disbarment he and his wife have suffered economic hardship. The factual and legal complexities of *United States v. Mandel* made the cost of Cory's defense very substantial. The couple's assets had been exhausted before the mistrial which ended the first trial. Nevertheless, counsel privately engaged by Cory actually received payment of only a fraction of the reasonable value of the services rendered. At the retrial the Federal Public Defender represented Cory.

No longer authorized to practice law, Petitioner has survived on social security, on payments for a service-connected partial disability and on about $2,000 per year in trustee's commissions, together with occasional earnings from cutting and selling firewood and from teaching sailing. Cory holds a real estate license but since 1977 has earned commissions on only one or two transactions. He and his wife reside on a property which they had given to charity, subject to a retained life estate, many years before the events giving rise to the indictment.

At the suggestion of his friend and attorney in these proceedings Cory enrolled in a professional responsibility course offered by the University of Maryland Law School. He successfully completed the course by writing a paper on morals and ethics. Petitioner has also conducted seminars at his alma mater, St. John's College, on law practice and ethics in professional life.

In addition Petitioner has submitted at least 26 letters, many from distinguished residents of Southern Maryland, vouching for Cory's present good moral character and urg-

ing his reinstatement. In reviewing these we are mindful of the admonition written by Judge Smith for the Court in *In re Raimondi and Dippel, supra,* when he said:

> In evaluating the statements from others as to the present good moral character of an applicant for readmission it must not be forgotten that a disbarred lawyer—like many people convicted of so-called "white-collar" crime—had earlier occupied a position in society where it is probable that testimonials as to his good moral character, similar to that elicited in connection with his application for reinstatement, could have been obtained at any point in time prior to knowledge of his misconduct on the part of those attesting to his good character. [285 Md. at 618, 403 A.2d at 1240.]

Nevertheless we do give some weight to the themes which run throughout these letters: that Cory accepts responsibility for his conduct; that he has borne the consequences of his conviction without bitterness and with dignity; and that his great desire is to be reinstated to the bar at which he practiced for over 30 years.

### C.

The final factor to be considered is an applicant's present competency. Cory was admitted in 1946. His private practice was active and general. At various times he has also served as a special attorney to the State Roads Commission, as Deputy State's Attorney for Prince George's County, as a special attorney for the State Accident Fund, as an Assistant Attorney General assigned to the Maryland State Police and as the City Solicitor for the town of Laurel. In the years immediately preceding the indictment Cory specialized in banking and real estate law. He was counsel in the formation of a number of banks in Southern Maryland.

Cory has endeavored to stay current with developments in the law by reading appellate opinions reported in the Daily Record. Indeed, when he was financially unable to continue his personal subscription, he would keep up with recent decisions by reading the Daily Record at the office of

his present counsel. Petitioner represented to the inquiry panel that, if reinstated, he would limit his practice to consultation on banking and real estate. Were he to become involved in a matter which he was not competent to handle, he would engage competent co-counsel. Bar Counsel has accepted these representations, as apparently did the inquiry panel.

The reservations of the Review Board as to competence went more to Cory's age and to the possibility of physical or mental deterioration. Those concerns have been met by favorable medical and psychological evaluations to which Cory submitted himself after the Review Board announced its conclusion and reports of which have been filed in the record.

We believe that Cory has by clear and convincing proof demonstrated at least average competence and that he need not be monitored by another member of the bar as a condition of reinstatement.

### D.

The central issue in this case is whether Cory's proof of rehabilitation over the length of time that he has been prohibited from practicing law overcomes the proof of bad character evidenced by his criminal conviction. This case is one in which we must weigh "the seriousness of the misconduct which produced disbarment and the [Court's] duty to society," against "the subsequent conduct and reformation of [the applicant], his present character, his present qualifications and competence to practice law . . . ." *In re Raimondi and Dippel, supra,* 285 Md. at 618, 403 A.2d at 1239-40.

There is some similarity between the present reinstatement case and the application for reinstatement of Thomas Paul Raimondi. Raimondi had been convicted of attempted bribery of a State Senator in connection with the election in 1969 by the General Assembly of a successor to Governor Spiro T. Agnew, who had resigned to become Vice President

of the United States. See *Raimondi v. State*, 12 Md.App. 322, 278 A.2d 664 (1971), *aff'd*, 265 Md. 229, 288 A.2d 882, *cert. denied*, 409 U.S. 948, 93 S.Ct. 293, 34 L.Ed.2d 219 (1972). Raimondi's resignation with prejudice was accepted December 29, 1972. On July 25, 1979 this Court denied reinstatement. We described Raimondi's offense as conduct which "strikes at the very fundamentals of our government, and the more so when it is perpetrated by a member of the Bar sworn to support the Constitution and laws of this State." *In re Raimondi and Dippel, supra*, 285 Md. at 620, 403 A.2d at 1240. The same can be said of the scheme to defraud which underlay the convictions of the defendants in *United States v. Mandel*.

However, unlike Raimondi who acted alone and was the architect of the bribery attempt, Cory was one of six defendants and was the bottom of the batting order in the indictment. The reported opinions in *United States v. Mandel* and the portions of the record in that case which are before us in the matter at hand show Cory to have been less culpable than the other participants in the scheme to defraud. Governor Mandel, Hess, Harry and Kovens were each sentenced to four years' imprisonment. In addition, Hess, Harry and Kovens were each fined $40,000.00. William was sentenced to 20 months and a $40,000 fine. Cory's initial sentence was 18 months. On May 1, 1980, after the United States Supreme Court had denied certiorari, the trial judge reduced Cory's sentence to 18 months' probation. Raimondi's sentence of 18 months was not judicially modified and he served a period of confinement.

Cory's sentence was modified to probation in large part because the Government, including the agents who had participated in the investigation and prosecution, supported Cory's motion for sentence reduction. The United States Attorney, Russell T. Baker, Jr., told the court that

> this entire process has been devastating to Mr. Cory in personal human terms in a way that, despite the suffering that the other men in this case have undergone, the devastation to Mr. Cory is just simply much larger ...

and I don't have the heart not to do everything in my power to stop your Honor or from recommending to your Honor that Mr. Cory not go to prison.

A most unusual feature of the present case is that the lead trial counsel for the prosecution and the trial judge in *United States v. Mandel* have both recommended that this Court reinstate Cory. Honorable Robert L. Taylor of the United States District Court for the Eastern District of Tennessee, the presiding judge, by letter of September 7, 1982 which was made an exhibit to Cory's petition, advises that his recommendation is based on an examination of Cory's application and on many of the letters from various Maryland lawyers which are also exhibits to that petition.

Barnet D. Skolnik, Esq., first chair for the Government at both trials, has in his exhibit letter of October 19, 1982 presented a thoughtful summary from which we quote liberally.

Mr. Cory's offense consisted, in essence, of allowing himself to be used by the other five defendants, in his capacity as an attorney, to mislead both public officials and private citizens regarding the true ownership of the race track around which the scheme to defraud revolved. Unlike many disbarred attorneys, Mr. Cory did not violate his fiduciary duty to his clients; on the contrary, he wanted so much to serve his clients that he knowingly stepped beyond proper limits in doing so. For that mistake, he and his family have suffered long and grievously.

... Mr. Cory is the only one of the six defendants in the case who has expressed to the community his awareness of personal wrongdoing and of involvement in a public harm. He has since the day of his conviction, five long years ago, manifested contrition and remorse. And he has done so with great dignity.

It appears that Mr. Cory has reflected more in recent years about the moral and ethical responsibilities of an attorney than most members of the bar in good standing

**188**

do in a lifetime. It is clear that reinstatement to his profession is now seen by this 68 year old man not primarily in economic terms, but as a matter of honor.

The purposes to be served by, and the lessons to be learned (both by him and by others) from Mr. Cory's disbarment have been fully accomplished. Under all the circumstances of Mr. Cory's situation, the public interest would not, in my judgment, be ill-served by a discretionary and humane decision by this Honorable Court in Mr. Cory's favor. I recommend his reinstatement to the bar.

We give considerable weight to these two recommendations because they are made by members of the profession whose relationship to the central issue in this case is nearly unique. Judge Taylor and Mr. Skolnik know all of the evidence presented to prove Cory's participation in the violations of federal criminal statutes. While all of the counsel for any of the six defendants were also privy to the proof, Judge Taylor and Mr. Skolnik are obviously free of even the suggestion that a lingering advocacy has tainted their recommendations so as to favor Cory's petition.

For all of the foregoing reasons we hold that Cory has established by clear and convincing proof that he should be reinstated. Accordingly, it is this 5th day of July, 1984, by the Court of Appeals of Maryland.

ORDERED that Ernest Neal Cory, Jr. be and he is hereby reinstated as a member of the Bar of Maryland upon taking in open court and subscribing to the oath of attorneys required by Md.Code (1957, 1981 Repl.Vol.), Art. 10, § 10.