874 A.2d 985

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**R. Scott SCROGGS.**

**Misc. Docket AG No. 16, Sept. Term, 2004.**

Court of Appeals of Maryland.

May 16, 2005.

Melvin Hirshman, Bar Counsel for Atty. Grievance Com'n, for petitioner.

Robert Scott Scroggs, Rockville, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

This is a reciprocal disciplinary action arising out of disciplinary proceedings initiated in Oklahoma, where respondent, R. Scott Scroggs [1], a member of that bar, practiced law. We are asked to decide the impact on Mr. Scroggs's privilege to practice law in Maryland as a result of the Supreme Court of

---

1. Robert Scott Scroogs was admitted to the Maryland Bar on June 14, 1988.

Oklahoma's approval of respondent's resignation from the Oklahoma bar pending disciplinary proceedings.

## Background

■ The Supreme Court of Oklahoma, in a previous disciplinary proceeding, suspended respondent from the practice of law for one year for violations of the Rules of Professional Conduct. *State ex rel. Oklahoma Bar Ass'n v. R. Scott Scroggs,* 70 P.3d 821 (2003) (petition for rehearing pending). While additional disciplinary proceedings were pending in Oklahoma, the complainant in those proceedings, the Oklahoma Bar Association, applied for an order approving the resignation of the respondent, R. Scott Scroggs, pending disciplinary proceedings. In conjunction with the action taken by the Bar Association, respondent filed in the same proceedings an Affidavit of Resignation from membership in the Oklahoma bar pending disciplinary proceedings. The Supreme Court of Oklahoma approved the application of the Bar Association and the resignation of R. Scott Scroggs. *State ex rel. Oklahoma Bar Ass'n v. R. Scott Scroggs,* 71 P.3d 15 (2003). Pursuant to Oklahoma law, Mr. Scroggs's resignation while disciplinary proceedings were pending is the equivalent of a disbarment. *Scroggs,* 71 P.3d at 17 (citing *State ex rel. Oklahoma Bar Ass'n v. Bourland, 19 P.3d* 289, 291 (2001)). In Oklahoma, "a lawyer resigning pending disciplinary proceedings may not make application for reinstatement prior to the expiration of five years from the date of the order approving the resignation." *Id.* citing *State ex rel. Oklahoma Bar Ass'n v. Grunewald,* 27 P.3d 482, 483 (2001); *State ex rel. Oklahoma Bar Ass'n v. Redell,* 38 P.3d 227, 228 (2001). In the order dated May 20, 2003, the Supreme Court of Oklahoma approved respondent's resignation, struck his name from the Roll of Attorneys, ordered that Mr. Scroggs could make no application for reinstatement to membership in the Oklahoma Bar Association before five years from the effective date of the court's order, and ordered him to repay with interest, to the Oklahoma Bar Association Clients' Security Trust Fund, any funds expended on his behalf.

Respondent's Affidavit of Resignation filed with the Supreme Court of Oklahoma asserted that "it was freely and voluntarily rendered; he was not subject to coercion or duress; and he was fully aware of the consequences of submitting the resignation." He also noted that he was suspended from the practice of law for one year in a previous case and that a petition for rehearing was pending. Respondent acknowledged that he was aware that the burden of proof rests upon the Bar Association in disciplinary proceedings, and that he waived any and all right to contest the allegations. In addition, Mr. Scroggs's resignation stated that a 25-page complaint was filed in the Supreme Court against him alleging misconduct for violation of Rules 1.1, 1.3, 1.4, 1.5(a) and (c), 1.15(a), (b) and (c), 1.16(d), 3.2, 8.1, and 8.4(c) of the Rules of Professional Conduct and Rule 5.2 of the Rules Governing Disciplinary Proceedings. He also acknowledged seven separate grievances filed with the Office of General Counsel against him for misconduct. *Id.* at 16. In addition to his acknowledgment of pending complaints, Mr. Scroggs stated in the affidavit that, "respondent is aware that allegations concerning his conduct, if proven, would constitute violations of the ... [Rules of Professional Conduct and the Rules Governing Disciplinary Proceedings]...."

On May 26, 2004, The Attorney Grievance Commission of Maryland (hereinafter "Bar Counsel"), acting pursuant to Rules 16–751 [2] and 16–773 [3] of the Md. Rules, filed a Petition

---

2. **Maryland Rule 16–751** provided in part:

(A) Commencement of disciplinary or remedial action. Upon approval of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

3. **Maryland Rule 16–773** provides:

(a) **Duty of attorney.** An attorney who in another jurisdiction (1) is disbarred, suspended, or otherwise disciplined, (2) resigns from the bar while disciplinary or remedial action is threatened or pending in that jurisdiction, or (3) is placed on inactive status based on incapacity shall inform Bar Counsel promptly of the discipline, resignation, or inactive status.

(b) **Petition in Court of Appeals.** Upon receiving and verifying information from any source that in another jurisdiction an attorney

has been disciplined or placed on inactive status based on incapacity, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2). A certified copy of the disciplinary or remedial order shall be attached to the Petition, and a copy of the Petition and order shall be served on the attorney in accordance with Rule 16–753.

(c) **Show cause order.** When a petition and certified copy of a disciplinary or remedial order have been filed, the Court of Appeals shall order that Bar Counsel and the attorney, within 15 days from the date of the order, show cause in writing based upon any of the grounds set forth in section (e) of this Rule why corresponding discipline or inactive status should not be imposed.

(d) **Temporary suspension of attorney.** When the petition and disciplinary or remedial order demonstrate that an attorney has been disbarred or is currently suspended from practice by final order of a court in another jurisdiction, the Court of Appeals may enter an order, effective immediately, suspending the attorney from the practice of law, pending further order of Court. The provisions of Rule 16–760 apply to an order suspending an attorney under this section.

(e) **Exceptional circumstances.** Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:

(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;

(3) the imposition of corresponding discipline would result in grave injustice;

(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or

(5) the reason for inactive status no longer exists.

(f) **Action by Court of Appeals.** Upon consideration of the petition and any answer to the order cause, the Court of Appeals may immediately impose corresponding discipline or inactive status, may enter an order designating a judge pursuant to Rule 16–752 to hold a hearing in accordance with Rule 16–757, or may enter any other appropriate order. The provisions of Rule 16–760 apply to an order under this section that disbars or suspends an attorney or that places the attorney on inactive status.

(g) **Conclusive effect of adjudication.** Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed.

(h) **Effect of stay in other jurisdiction.** If the other jurisdiction has stayed the discipline or inactive status, any proceedings under this

for Disciplinary or Remedial Action against Mr. Scroggs to which a certified copy of the Oklahoma Supreme Court's Order Approving Resignation Pending Disciplinary Proceedings and Order Suspending Respondent from the Practice of Law for One Year were attached. In the Petition, Bar Counsel alleged that respondent is subject to the disciplinary authority of this State pursuant to Maryland Rule 16–701 and charged that respondent engaged in misconduct as defined therein, specifically, failing to report his discipline in Oklahoma to Bar Counsel in violation of Maryland Rule 16–773(a), and MRPC 1.1 (Competence) [4], 1.2 (Scope of Representation) [5],

---

Rule shall be deferred until the stay is no longer operative and the discipline or inactive status becomes effective. (Added Nov. 30, 2000, effective July 1, 2001; amended Nov. 12, 2003, effective Jan. 1, 2004.)

4. **Rule 1.1. Competence.**

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

5. **Rule 1.2. Scope of representation.**

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs ©, (d) and (e), and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.

(c) A lawyer may limit the objectives of the representation if the client consents after consultation.

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

(e) When a lawyer knows that a client expects assistance not permitted by the Rules of Professional Conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.

1.3 (Diligence) [6], 1.4 (Communication) [7], 1.5 (Fees) [8], 1.15 (Safe-keeping Property) [9], 1.16 (Declining or Terminating Represen-

6. **Rule 1.3. Diligence.**
 A lawyer shall act with reasonable diligence and promptness in representing a client.

7. **Rule 1.4. Communication.**
 (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

8. **Rule 1.5** provides (in part) that:
 (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
 (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;
 (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
 (3) the fee customarily charged in the locality for similar legal services;
 (4) the amount involved and the result obtained;
 (5) the time limitations imposed by the client or by the circumstances;
 (6) the nature and length of the professional relationship with the client;
 (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
 (8) whether the fee is fixed or contingent.

9. **Rule 1.15 provides as follows:**
 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
 (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

tation) [10], 3.2 (Expediting Litigation) [11], 8.1 (Bar Admission

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

### 10. Rule 1.16. Declining or terminating representation.

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Rules of Professional Conduct or other law;

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or

(3) the lawyer is discharged.

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:

(1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(2) the client has used the lawyer's services to perpetrate a crime or fraud;

(3) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

(4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(6) other good cause for withdrawal exists.

(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

### 11. Rule 3.2. Expediting Litigation.

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

and Disciplinary Matters) [12], and 8.4 (Misconduct) [13].

This Court issued three Show Cause Orders directing personal service on the respondent on or before a date certain and directing respondent to show cause in writing based upon any of the grounds set forth in Maryland Rule 16–773(e) why disbarment should not be imposed by this Court. Bar Counsel contends that it was unable to serve Mr. Scroggs personally. Thus it was necessary to serve notice on respondent's agent, the Client Protection Fund of the Bar of Maryland pursuant to Rule 16–753 [14].

---

12. **Rule 8.1. Bar admission and disciplinary matters.**

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement or material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

13. **Rule 8.4. Misconduct.**

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official; or

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law. (Amended Dec. 10, 1996, effective July 1, 1997.)

14. **Rule 16–753. Service of petition.**

A copy of a Petition for Disciplinary or Remedial Action filed pursuant to Rule 16–751, and the order of the Court of Appeals designating a judge pursuant to Rule 16–752, shall be served on an attorney by the Court of Appeals. If after reasonable efforts the attorney cannot be served personally, service may be made upon the employee designated by the Client Protection Fund of the Bar of Maryland pursuant to Rule 16–811 c 1(x), who shall be deemed the attorney's agent of receipt of

On November 8, 2004, respondent filed a written response to the order to show cause served upon the Client Protection Fund. In his response, respondent asserts that the Petition for Disciplinary or Remedial Action and Show Cause Order were never personally served on him and that Rule 16–754 [15] is not applicable because Rule 16–753 requires reasonable efforts to serve process and one attempt at personal service was not reasonable in this case. We will address the issue of service of the orders to show cause later in this opinion.

## Discussion

In our review of the Petition for Disciplinary or Remedial Action and Respondent's Response To A Show Cause Order, we are guided by Maryland Rule 16–773. Pursuant to Rule 16–773(a) an attorney who in another jurisdiction is disbarred, suspended, or resigns from the bar while disciplinary or remedial action is threatened or pending in that jurisdiction shall inform Bar Counsel promptly of the discipline, resignation, or inactive status. Section (c) of Rule 16–773 requires that, after a petition and certified copy of a disciplinary or remedial order have been filed, the Court must order that Bar Counsel and the attorney "show cause in writing based upon any grounds set forth in section (e) of this Rule why corre-

---

service. The Fund's employee shall send, by both certified mail and ordinary mail, a copy of the papers so served to the attorney at the address maintained in the Fund's records and to any other address provided by Bar Counsel. (Added Nov. 30, 2000, effective July 1, 2001; amended effective Nov. 6, 2002.)

15. **Rule 16–754. Answer.**

(a) **Timing; contents.** Within 15 days after being served with the petition, unless a different time is ordered, the respondent shall file with the designated clerk an answer to the petition and serve a copy on the petitioner. Sections © and (e) of Rule 2–323 apply to the answer. Defenses and objections to the petition, including insufficiency of service, shall be stated in the answer and not by preliminary motion.

(b) **Procedural defects.** It is not a defense or ground for objection to a petition that procedural defects may have occurred during disciplinary or remedial proceedings prior to the filing of the petition.

(c) **Failure to answer.** If the time for filing an answer has expired and the respondent has failed to file an answer in accordance with section (a) of this Rule, the court shall treat the failure as a default and the provisions of Rule 2–613 shall apply. (Added Nov. 30, 2000, effective July 1, 2001.)

sponding discipline" should not be imposed. Specifically, 16–773(e) provides:

Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that: (1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; (2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct; (3) the imposition of corresponding discipline would result in grave injustice; (4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or (5) the reason for inactive status no longer exists.

Rule 16–773(g), provides in relevant part that: "A final adjudication in a disciplinary or remedial proceeding by another court ... is conclusive evidence of that misconduct...." *Atty. Griev. Comm'n v. Roberson,* 373 Md. 328, 818 A.2d 1059 (2003) (a challenge to the original adjudication in reciprocal discipline actions is limited to notice and opportunity to be heard or infirmity of proof). We have recognized in reciprocal disciplinary cases that a respondent is not allowed, other than as provided by our rules, to collaterally attack either the findings of fact or the judgment rendered by the original jurisdiction. *Atty. Griev. Comn'n v. Sabghir,* 350 Md. 67, 81, 710 A.2d 926, 932–33(1998).

██ Although respondent fails to raise any of the exceptional circumstances outlined in Rule 16–773(e), his assault on the Oklahoma disciplinary proceedings is launched on several fronts. First, he contends that although the Supreme Court of Oklahoma issued an order suspending him from the practice of law for one year, the filing of his petition for reconsideration automatically suspended that order. Second, he posits that the orders issued by the Supreme Court of Oklahoma on March 4, 2003 (suspension) and May 20, 2003 (order approving resignation) were not remedial or disciplinary orders. Respondent reasons that an order approving an attorney's resignation from the practice of law is not "a disciplinary or

remedial order." In addition, although acknowledging that resignation pending disciplinary proceedings is tantamount to a disbarment in Oklahoma, his view is that that statement of the law refers only to the procedural similarities in applying for readmission to the bar. Third, respondent asserts that in the order of resignation, the Supreme Court of Oklahoma made no findings of fact as to the allegations against him. Thus, the allegations stated in the order approving his resignation were never subjected to court review. Moreover, he argues that Rule 16–773 was not intended to cover resignations pending disciplinary proceedings because that type of proceeding does not result in an order to disbar, thus, the show cause order we issued was improper. Finally, respondent contends he was never properly served with the Maryland petition and show cause order. According to Mr. Scroggs, there was only one attempt to serve him and copies of the documents filed in these proceedings were never mailed to him. Therefore, the default provisions of Rule 16–754 are not applicable.

Taking a contrary view of the Oklahoma proceedings, petitioner contends that respondent was disciplined twice. First, he was suspended for one year from the practice of law by the Supreme Court of Oklahoma, and that constituted a final order despite respondent's filing a petition for rehearing. Moreover, respondent confirmed his suspension when he admitted his suspension in the context of his subsequent Affidavit of Resignation. According to petitioner, the motion for reconsideration was never granted. Therefore, the issues raised by the motion are moot because the Supreme Court of Oklahoma approved the application for resignation pending disciplinary proceedings. Petitioner argues that the affidavit respondent signed and filed with the Supreme Court of Oklahoma contains the very same kinds of statements as required by Md. Rule 16–772(b)(2) [16] regarding an attorney's affidavit to

---

16. **Rule 16–772. Consent to discipline or inactive status.**

\* \* \* \* \* \*

(b) **Consent to discipline for misconduct.**

\* \* \* \* \* \*

consent to discipline for misconduct. Mr. Scroggs waived his right to contest the factual allegations in the Oklahoma proceedings, and acknowledged that if the allegations are proven, they constitute misconduct. As to Oklahoma law, petitioner asserts that there is no distinction between disbarment and an order approving resignation pending disciplinary proceedings relying on *State ex rel. Oklahoma Bar Ass'n v. Bourland,* 19 P.3d 289, 291 (2001). Finally, in petitioner's view Mr. Scroggs was properly served under the circumstances.

█ We note that respondent cites no case law or statutory authority to support his position on the status of Oklahoma law. Rule 6.15(c) of the Oklahoma Rules Governing Disciplinary Proceedings provides that either party to a disciplinary proceeding may file a petition for rehearing within 20 days after mailing of the court's decision. Respondent filed a petition for reconsideration which the court did not rule upon. We are unable to find any reported Oklahoma cases discussing Rule 6.15 generally or specifically as to the effect of a pending petition for rehearing on the disciplinary orders of the court. As a practical matter, however, the fact that the petition for rehearing is pending is of no consequence to our decision in this case. The Supreme Court of Oklahoma rendered its decision suspending Mr. Scroggs on March 3, 2003. As of the date of this opinion, the Oklahoma Supreme Court has not published its ruling on the petition for rehearing and more than one year has passed since the court entered its order suspending Mr. Scroggs from the practice of law. Hence, in

---

(2) Affidavit required. A joint petition filed under subsection (b)(1) of this Rule shall be accompanied by an affidavit by the attorney that certifies that the attorney:

(A) is aware that an investigation or proceeding is currently pending involving allegations of professional misconduct, the nature of which shall be specifically set forth;

(B) knows that if a hearing were to be held, sufficient evidence could be produced to sustain the allegations of misconduct;

(C) consents to the disbarment or other discipline stated in the petition;

(D) gives the consent freely and voluntarily without coercion or duress;

(E) is aware of the effects of the disbarment or other discipline to which the attorney is consenting; and

(F) agrees to comply with Rule 16–760 and any conditions stated in the petition that the Court of Appeals may impose.

our view the issue is moot. The final decision of the Oklahoma Supreme Court, as published in *State ex rel. Oklahoma Bar Association v. Scroggs,* 70 P.3d 821(2003), is that respondent was suspended from the practice of law in Oklahoma for the reasons of misconduct as explained by the court in its published opinion.

We agree with petitioner that there is no difference between an order of disbarment and an order approving resignation pending disciplinary proceedings under Oklahoma law in view of the consequences to respondent's privilege to practice law. Respondent's license to practice law is terminated under either disposition. Both dispositions flow out of disciplinary proceedings. Respondent is required to meet the standards for admission if, and when, he seeks readmission to the bar. Further as a limitation on his ability to practice law, respondent may not make an application for reinstatement prior to the expiration of five years from the date of the order approving the resignation. *State ex rel. Oklahoma Bar Ass'n v. Scroggs,* 71 P.3d 15 (2003).[17]

There is no merit to respondent's contention that the order of suspension and the order approving his resignation were not remedial or disciplinary orders of the court. Indeed, his resignation in light of disciplinary proceedings was the equivalent of disbarment. The court approved Mr. Scroggs's resignation on the condition that he did not challenge the allegations of misconduct and on the condition that he freely and voluntarily admitted that the allegations of misconduct, if proven, would constitute violations of specific enumerated rules of professional conduct. It was the disciplinary proceedings and the allegations of misconduct against Mr. Scroggs which served as the predicate for the court's disposition. Under the Maryland Rules of discipline, "disbarment means unconditional termination of any privilege to practice law in

---

17. By contrast, the availability to an attorney to resign during the pendency of disciplinary proceedings does not exist in Maryland. Rule 16–775(b) provides in relevant part that an attorney may not resign while the attorney is the subject of a disciplinary investigation, action, or proceeding involving allegations of professional misconduct.

this State...." Rule 16–701(e). The resignation pending disciplinary proceedings in Oklahoma is, indeed, tantamount to a disbarment in Maryland.

The affidavit Mr. Scroggs signed and filed with the court contained the same statements required by Md. Rule 16–772(b)(2). Similarly, in Maryland when an attorney consents to discipline, he or she must certify by affidavit, among other things, that he or she, "knows that if a hearing were to be held, sufficient evidence could be produced to sustain the allegations of misconduct." Here, respondent acknowledged the misconduct alleged and waived any right to contest the allegations. His overall consent to resignation pending disciplinary proceedings was the equivalent of consent to disciplinary action in Maryland. We hold, therefore, that the proceedings held in Oklahoma with regard to respondent's suspension and resignation pending disciplinary proceedings were, in fact, disciplinary or remedial actions subjecting Mr. Scroggs to the imposition of reciprocal discipline in Maryland.

■ From our review of the record, we find that service of the Petition for Disciplinary or Remedial Action and the order to show cause were properly served on the Client Protection Fund. An affidavit and report filed in these proceedings details the efforts of Mr. Dennis F. Biennas, Investigator with the Attorney Grievance Commission of Maryland, to serve respondent. Because the multiple attempts to communicate with respondent and contact him personally for the purpose of service of process failed, it was reasonable to serve him through the Client Protection Fund. *Atty. Griev. Comm'n v. Faber*, 373 Md. 173, 817 A.2d 205(2003). Respondent filed in this Court a timely response to the order to show cause on November 8, 2004[18]. In our view, respondent has failed to offer any evidence to rebut the presumption of proper service.

---

18. Respondent did not file a separate answer to the Petition For Disciplinary Or Remedial Action. Although he filed an answer to the order to show cause, Mr. Scroggs did not argue that his answer to show cause ought to be treated as his answer to the Petition. Md. Rule 16–754(c), provides in relevant part that if the time for filing an answer has

It is implicit in respondent's answer to the show cause order that he violated Rule 16–773(a) in failing to promptly inform Bar Counsel of his suspension and resignation from the Oklahoma bar while disciplinary or remedial action was pending in Oklahoma. He concedes the suspension order and his resignation while disciplinary proceedings were pending, but asserts that his motion for rehearing stayed the suspension order and his resignation was not a disciplinary matter. We have rejected both contentions and hold that Mr. Scroggs violated Md. Rule 16–773(a) in failing to promptly inform Bar Counsel in Maryland of his suspension and resignation while disciplinary proceedings were pending. There is no evidence in the record to support a contrary conclusion.

### Sanction

 In a reciprocal discipline case we are inclined, but not required, to impose the same sanction as that imposed by the state in which the misconduct occurred. *Atty Griev. Comm'n v. Ruffin*, 369 Md. 238, 253–254, 798 A.2d 1139, 1148 (2002). We are required to assess for ourselves the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission. *Atty Griev. Comm'n v. Gittens*, 346 Md. 316, 326, 697 A.2d 83, 88 (1997). We are also required to consider "the particular facts and circumstances of each case, the outcome being dependent upon the latter, but with a view toward consistent dispositions for similar misconduct." *Atty. Griev. Comm'n v. Roberson*, 373 Md. 328, 356, 818 A.2d 1059, 1076 (2003) (citations omitted). As in Oklahoma, we impose sanctions not to punish the attorney, but to protect the public. *State ex rel. Oklahoma Bar Association v. Groshon*, 82 P.3d 99 (2003); *Atty. Griev. Comm'n v. Spery*, 371 Md. 560, 568, 810 A.2d 487, 491 (2002). The petitioner

expired and the respondent has failed to file an answer to the petition, the court shall treat the failure as a default. Because there appears to be no factual dispute in this case, we need not reach the question of the propriety of a default order. In addition, petitioner has not requested that we enter an order of default and respondent has asserted, in his answer to the show cause order, that the default provisions are inapplicable.

recommends disbarment and respondent suggests that he is not subject to any discipline.

█ At the time of respondent's resignation from the Oklahoma bar, he was suspended for one year, effective March 4, 2003, based upon allegations of misconduct similar to those filed in this case. In that disciplinary proceeding the Supreme Court of Oklahoma concluded that respondent violated the following rules of professional conduct: 1.1, 1.3, 1.4(a), 1:15(a), (b), and (c), 1.16(a)(5), 3.2, 8.1(a) and 8.4(c). Specifically, with regard to Mr. Scroggs's violation of Rules 8.1(a) and 8.4(c) and the allegations of dishonesty, "the court concluded that respondent deliberately misrepresented material facts to the Oklahoma Bar Association." *State ex rel. Oklahoma Bar Association v. Scroggs*, 70 P.3d 821, 833 (2003).

The allegations of misconduct giving rise to Mr. Scroggs's resignation involved eight separate clients and involved matters of neglect, incompetence, lack of communication, and dishonesty. The complaint filed against him also contained allegations of misconduct for violation of Rules 8.1 and 8.4(c), The specific allegations with regard to dishonesty were that, "respondent informed the [Oklahoma] Bar Association he had accounted for work to Patricia Hurst [a client], and provided Hurst with a partial refund for [legal representation] when he did not, that he made misrepresentations to the Bar." In addition, it was alleged that respondent "neglected legal matters and failed to return the client's property." On another occasion, "he provided the Bar Association with false information." On three other occasions, individual clients each paid respondent "$650.00 for legal representation and either the fee agreement was not in writing or he neglected a legal matter, or failed to communicate with the client, or made a misrepresentation."

"A final adjudication in a disciplinary or remedial proceeding by another court ... that an attorney has been guilty of professional misconduct ... is conclusive evidence of that misconduct...." Rule 16–773(g). The allegations forming the basis for both disciplinary proceedings in Oklahoma are not in

dispute. Respondent's failure to promptly inform Bar Counsel of the Oklahoma discipline is not really in dispute. Specifically, however, with regard to matters of intentional dishonesty we have said that,

in disciplinary matters, we will not in the future attempt to distinguish between degrees of intentional dishonesty based upon convictions, testimonial or other factors. Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.

Disbarment ordinarily should be the sanction for intentional dishonest conduct.

*Atty. Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001). Thus, if respondent's misconduct had occurred in Maryland, ordinarily we would have imposed the sanction of disbarment.

Oklahoma has held that the effect of an attorney's resignation pending disciplinary proceedings is the equivalent of a disbarment. Respondent's resignation, therefore, is tantamount to a disbarment for five years beginning, May 20, 2003. After five years, respondent may apply for readmission to the Oklahoma bar. If granted admission there, he could apply for readmission to the Maryland bar.

Rule 11.1 of the Oklahoma Rules Governing Disciplinary Proceedings covers reinstatement. Pursuant to that rule, an applicant who is either disbarred or accepts resignation pending investigation of disciplinary proceedings shall not be permitted to file an application for reinstatement, after disbarment or resignation pending investigation or disciplinary proceedings, within five (5) years of the effective date of the order of the Supreme Court of Oklahoma disbarring the applicant or accepting resignation. For purposes of disposition, Oklahoma does not distinguish between disbarment and resignation pending disciplinary proceedings. Nor shall we.

Therefore, in this action, we defer to the decision of the Oklahoma Supreme Court and the venue where the misconduct occurred and conclude that the appropriate sanction in this reciprocal action is disbarment.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST ROBERT SCOTT SCROGGS.*

RAKER, J., dissenting.

The sanction in this case should be disbarment. I would not tack on a requirement that before respondent may apply for readmission to the Maryland Bar, he must first be readmitted to the Oklahoma Bar.

I recognize that this disciplinary action arises as a reciprocal disciplinary action. Respondent's resignation was accepted in Oklahoma, his name was stricken from the Roll of Attorneys, and the state Supreme Court ordered that five years must elapse before he may make application for readmission to that Bar. Oklahoma treats resignation while disciplinary matters are pending as disbarment.

In Maryland, to my knowledge, no disbarred lawyer has been limited, as a matter of court order, to wait any particular period of time or to be readmitted in a foreign jurisdiction, before that lawyer may apply for readmission in the Maryland Bar. This is the situation even in reciprocal disbarment cases. While practically speaking, a disbarred lawyer must wait a substantial period of time before reapplying, this Court has not imposed a five year waiting period. What if respondent had been disbarred in Florida, Louisiana, Kentucky or Oregon, states that have permanent disbarment? Would that mean that respondent would be permanently disbarred in Maryland, even though Maryland does not have permanent disbarment?

This Court has stated often that in reciprocal disbarment cases, while we usually impose a like sanction, we are not bound to do so. We have explained as follows:

"This Court has often imposed sanctions, in reciprocal discipline cases, of facially equal severity to those imposed by a sister state. Nevertheless, there is no requirement that this should be done; we need not impose the same sanction as that imposed by the other jurisdiction. In fact, this Court is duty-bound to assess for itself the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission. Indeed, we have stated the rule in reciprocal discipline cases to be:

" 'When the Court considers the appropriate sanction in a case of reciprocal discipline, we look not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct.' "

*Attorney Grievance v. Sabghir,* 350 Md. 67, 83–84, 710 A.2d 926, 934 (1998) (quoting *Attorney Grievance v. Willcher,* 340 Md. 217, 222, 665 A.2d 1059, 1061 (1995)) (citations omitted); *accord Attorney Grievance v. Richardson,* 350 Md. 354, 371, 712 A.2d 525, 533 (1998).

This Court enunciated criteria for reinstatement after disbarment in *In re Meyerson,* 190 Md. 671, 59 A.2d 489 (1948), which consistently have been reiterated and reaffirmed. *See e.g., Matter of Murray,* 316 Md. 303, 304–05, 558 A.2d 710, 710–11 (1989); *Matter of Cory,* 300 Md. 177, 180, 477 A.2d 273, 274 (1984); *In re Braverman,* 271 Md. 196, 199–200, 316 A.2d 246, 247 (1974); *Maryland St. Bar Ass'n v. Boone,* 255 Md. 420, 432–35, 258 A.2d 438, 444–45 (1969). In *Murray,* we stated as follows:

"Disbarment 'does not in all *circumstances* forever prevent reinstatement. . . .' 'There may be a point in time when it is proper to reinstate to the practice of law even one who has committed a most heinous crime.' The fundamental inquiry is 'whether, in the interval following the rendering of the

judgment of removal, the petitioner has become a proper person to hold such office.' 'We ... look probingly at any reapplication alleging reform, rehabilitation and competence' because, although '[w]e continue to believe that a fallen lawyer may rise again,' we permit reinstatement 'only after a clear and demonstrated change from what he was before.' In other words, 'while disbarment does not necessarily operate as a permanent disability, it may only be overcome by a clear and convincing showing of rehabilitation and of legal competence, borne out by an applicant's conduct over a long period of time.' "

316 Md. at 304–05, 558 A.2d at 710–11 (citations omitted). We pointed out, more specifically, that the essential factors to be evaluated include the following:

"1. The nature and circumstances of petitioner's original misconduct.

2. Petitioner's subsequent conduct and reformation.

3. His or her present character.

4. His or her present qualifications and competence to practice law."

*Id.* at 305, 558 A.2d at 711.

I do not suggest that respondent should be readmitted at any particular time. Rather, I believe that he should stand disbarred, and if and when he applies for readmission, we should consider the criteria and factors for readmission and make our decision accordingly.