838 A.2d 1238

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Caroline P. AYRES–FOUNTAIN.

No. 11, Sept. Term, 2003.

Court of Appeals of Maryland.

Dec. 22, 2003.

Melvin Hirshman, Bar Counsel, John C. Broderick, Asst. Bar Counsel for Atty. Grievance Com'n, for petitioner.

Kenneth W. Ravenell, Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

BELL, C.J.

The Supreme Court of Delaware, in an unreported, per curiam opinion, dated July 8, 2002, "ha[ving] considered this matter seriously ... [and] find[ing] the Board [on Professional Responsibility]'s recommendation ... to be appropriate in light of the presence of the following aggravating factors: a substantial prior disciplinary record; a pattern of misconduct; multiple violations; and engaging in deceptive practices during the disciplinary process," accepted that recommendation and the Board's report supporting the recommendation and ordered Caroline Patricia Ayres–Fountain, the respondent, a member of the Delaware, Maryland, District of Columbia and Virginia Bars, suspended from the practice of law in Delaware for a period of three years, from the date of the court's opinion.

The Board's Report and Recommendation,[1] attached to the court's opinion, explicated the charges and the reasons for the recommendation, as follows:

---

* Eldridge, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. In preparing its Report and Recommendation, the Board on Professional Responsibility accepted a Stipulation of Admitted Facts and Violations and a Joint Recommendation of Sanctions (the "stipulation"), entered into by the respondent and the Office of Disciplinary Counsel ("ODC"), pursuant to which Petition for Discipline Board Case Nos. 12, 17, 38, 39 and 55, 2001 would be resolved. That resolution

"I. ADMITTED VIOLATIONS AS SET FORTH IN THE STIPULATION

"A. Board Case No. 12

"For the years 1996–2000, Respondent admits that statements she made on her Certificates of Compliance filed with the Delaware Supreme Court falsely represented that Respondent had timely filed and paid all federal, state and local payroll, gross receipts and income taxes. Respondent, however, had not timely filed and paid various taxes at the time the Certificates of Compliance were filed. The specific tax filings and unpaid or late taxes are set forth in paragraphs 5–11 of the Stipulation. They include federal income taxes, unemployment tax assessments, City of Wilmington net profit taxes and federal employment taxes. For the four year period from 1996–2000, the total amount of taxes that were not timely paid is approximately $82,000. At the hearing, the Respondent testified that she has now made all the necessary tax filings and is in the process of negotiating payment plans with respect to any taxes still owed. . . . [2]

"In 2001, Respondent filed a Certificate of Compliance in which she acknowledged for the first time that timely filing and payment of taxes had not been made. Stipulation 1J19. The 2001 Certificate of Compliance did not, however, disclose that on March 9, 2000, the Division of Unemployment filed a Certificate of Employer's Indebtedness with the Superior Court. Id. Thus, the 2001 Certificate was also inaccurate.

---

included the ODC's agreement to dismiss Counts 9, 15, 18, 20, 22 and 26 of the petition. The stipulation is quite detailed, consisting of 26 pages and 128 paragraphs with respect to the counts as to which the respondent was to be disciplined. In addition, it covered the 6 counts to be dismissed and detailed the aggravating and mitigating factors considered in arriving at the stipulation and to be taken into account in fashioning the appropriate sanction.

**2.** In a footnote, the Board stated: "The Stipulation also recites that Respondent has filed returns and that she had paid a substantial portion of the outstanding taxes and assessments. Stipulation ¶¶ 5–11."

"In addition, during the course of her dealings with the ODC in connection with a private admonition issued on October 11, 2000, Respondent concealed her failure to file and/or pay various city, state and federal taxes from the ODC and its auditor." Tr. 15–17.

Respondent admits that this concealment was wrong and the result of "[a] bad judgment and mistakes." Id. at 17. In trying to explain why she failed to disclose this information. Respondent testified:

"I guess for a long time I wanted everybody to think everything was alright. And that I didn't have it together. So I didn't tell her how bad it was."

"As a result of the foregoing, Respondent admits to violations of the following Rules of Professional Conduct:

● Rule 1.15(b) (failure promptly to deliver funds to third parties that they are entitled to receive);
● Rule 8.1(a) (providing deceptive or misleading information to the ODC or its agents);
● Rule 8.4(c) (conduct involving deceit); and
● Rule 8.4(d) (conduct prejudicial to the administration of justice).

In addition, Respondent admits to having violated Rule 7(c) of the Rules of Disciplinary Procedure when she failed to provide documentation necessary for an audit performed in 2001 as a condition to the private admonition issued in October 2001.

## "B. Board Case No. 17b

"Respondent represented Calvin A. Johnson in a criminal matter involving a motion for post conviction relief. Mr. Johnson paid $2,000 which Respondent deposited into her operating account before the fees were earned. As set forth in paragraphs 42–62 of the Stipulation, Respondent did not promptly file the motion for post conviction relief nor did she keep her client fully and correctly informed. The motion was eventually filed and denied. Respondent did not, however, file a timely notice of appeal. After Mr. Johnson filed a pro se notice of appeal, the Supreme Court directed the Respondent

to file a notice of appeal and then to file a notice of withdrawal. The Supreme Court subsequently granted Respondent's motion to withdraw on May 24, 2001. In connection with the Johnson representation, Respondent admits to violations of the following Rules of Professional Conduct:

- Rule 1.1 (failure to provide competent representation);
- Rule 1.3 (failure to act with reasonable diligence and promptness);
- Rule 1.4(a) (failure to keep client reasonably informed and to comply promptly with reasonable requests for information);
- Rule 1.5(f) (failure to hold unearned fees in trust account and to provide written statement upon withdrawal of funds);
- Rule 1.15(a) (failure to hold client property separate from attorney's property);
- Rule 1.16(d) (failure to take steps necessary to protect clients' interest);

    and

- Rule 8.4(c) (deceit or misrepresentation).

"C.  Board Case No. 38

"Respondent represented Rodney Nesmith in connection with a civil matter. As set forth in paragraphs 81–93 of the Stipulation, the representation began on or around May 20, 1999, although a draft complaint was not sent to Mr. Nesmith until June 23, 2000. The complaint was not filed in federal District Court until May 24, 2001. Thereafter, Respondent moved to withdraw as counsel which motion was granted. In connection with the Nesmith representation. Respondent admits to the following violation of the Rules of Professional Conduct:

- Rule 1.3 (failure to act with reasonable diligence and promptness)[.]

"D.  Board Case No. 39

"Respondent represented Daniel Paskins in a criminal matter involving a motion for post conviction relief. As set forth

in paragraphs 97–104 of the Stipulation, Respondent was retained in October 1998. The motion for post conviction relief was filed on November 17, 2000. Thereafter, the Superior Court denied the motion as procedurally barred. The Superior Court stated that the filing of the motion bordered on being 'frivolous.' In connection with the Paskins representation, Respondent admits to a violation of the following Rules of Professional Conduct:

● Rule 1.3 (failure to act with reasonable diligence and promptness)[.]

"E.   Board Case No. 55

"Respondent represented Mr. and Mrs. Silvious in a civil matter as set forth in paragraphs 108–124 of the Stipulation. Respondent failed to comply with a stipulated briefing schedule issued by the Superior Court, failed to appear for a hearing and then sought to withdraw as counsel. In connection with the Silvious' representation, Respondent admits to violations of the following Rules of Professional Conduct:

● Rule 1.3 (failure to act with reasonable diligence and promptness); and

● Rule 1.16(d) (failure to protect clients' interests on withdrawal of representation)[.]

"II.   THE APRIL 10, 2002 HEARING

"The Respondent testified at the Panel hearing. She was admitted to the Delaware bar in 1986. Tr. 14. She is also admitted in Maryland, Virginia and the District of Columbia. Id. As noted above, Respondent explained her behavior as being a result of bad judgments and mistakes. During the course of her testimony, Respondent demonstrated embarrassment, remorse and an understanding of the wrongfulness of her acts.[3]

---

**3.** In a footnote, the Board observed: "Although there was evidence that Respondent had been diagnosed in 1991 as having Graves disease (Tr. 27), she did not use this condition as an excuse for her wrongdoing."

"With respect to her current legal practice, Respondent testified that she is in the process of winding down her solo practice. Id. at 20–21. At the time of the hearing, she had two matters in which substitute counsel will be obtained if necessary. Id. Respondent is currently serving as conflicts counsel for the public defender in Maryland.

## "III. RECOMMENDED SANCTION

"The parties have proposed a three year suspension from practice sanction and have agreed on the applicable aggravating and mitigating factors. Stipulation at p. 25. The aggravating factors are: Respondent's prior disciplinary record including a private admonition in 2000 for violations of Rules 1.5(b), 1.5(f) and 1.15(a) [ABA Standards for Imposing Lawyer Sanctions ('Standards')] § 9.22(a)J; a pattern of misconduct [Standards § 9.22(c)]; multiple violations [Standards § 9.22(d)]; and engaging in deceptive practices during the disciplinary process [Standards § 9.22(f)]. The mitigating factor is the Respondent's acknowledgement of the wrongfulness of her conduct by admitting to 19 counts of violations of the Rules of Professional Conduct and the Procedural Rules.

"The Panel accepts the facts to which the parties have stipulated in the Stipulation and agrees that a three year suspension is appropriate under the circumstances. A three year suspension is consistent with sanctions imposed in previous cases involving similar violations. For example, in *In re Roger P. Sanders*, 498 A.2d 148 (Del.1985), a three year suspension was imposed on an attorney who willfully failed to file state income tax returns for three years and failed to make state income tax payments for two years. Although mitigating factors were present, including the attorney's good record of professionalism and cooperation with the Board of Professional Responsibility's investigation, the Court concluded that a period of suspension was necessary because the attorney's willful failure to file his **tax** returns was conduct involving moral turpitude. Id. at 150.

"A similar sanction was ordered in *In the Matter of G. Thomas Sandbach* 546 A.2d 345 (Del.1988). *Sandbach* involved the willful failure to file state income tax returns for a five year period. In *Sandbach* as here, the attorney cooperated with the Board of Professional Responsibility but that cooperation occurred only after the violations were otherwise brought to light. The Court also considered the fact that the violations were repetitive in nature and accordingly, determined that a three year suspension was appropriate.

"A three year suspension was also ordered in *In the Matter of Tos*, 610 A.2d 1370 (Del.1992). *Tos* involved admitted allegations of failure to file state tax returns for two years and a federal tax return for one year. The failure to file was willful and the attorney had a prior disciplinary history. Tos' disciplinary history was, however, more serious than Respondent's. It involved three prior private admonitions and a one year suspension. In contrast, Respondent has just one prior private admonition. Although the attorney in *Tos* cooperated with ODC, that cooperation was, as was the cooperation in *Sandbach* and here, not self-initiated.

"More recently, in *In the Matter of John R. Hiner, Jr.*, 796 A.2d 654 (Del.2002) (Order), a three year practice suspension was ordered in a case involving similar rule violations. In *Hiner*, the respondent filed false Certificates of Compliance, failed to file and pay federal and state taxes, failed to pay payroll taxes and engaged in practice related violations including a lack of diligence in representing a client, not keeping the client reasonably informed, failing to segregate client funds, failing to deliver funds and an accounting to a client, and failing to protect a client's interest upon withdrawal of representation.

"This matter has many of the same characteristics as were present in *Sanders, Sandbach, Tos* and *Hiner*. Respondent's conduct with respect to Case No. 12 was willful, repetitive, and it occurred over a number of years. Although Respondent has cooperated with the OCD, that cooperation was not self-initiated. Respondent has demonstrated remorse as appears

to have been the case with the attorneys in *Sanders, Sandbach* and *Tos*.[4]

"The Panel did consider the fact that this case presents practice related violations that were not present in *Sanders, Sandbach* and *Tos*. In light of Respondent's acknowledgement of wrongdoing, her remorse and her acceptance of responsibility for the consequences of her action and the fact that there was no direct client harm, the Panel does not believe that a harsher sanction is necessary to account for the practice related violations set forth."

Having received information that the respondent had been suspended from engaging in the practice of law in Delaware, as required by Maryland Rule 16–771(b), the petitioner, the Attorney Grievance Commission, by bar counsel filed, pursuant to Rule 16–751,[5] a Petition for Disciplinary or Remedial Action in the Court of Appeals, to which it attached a copy of the opinion of the Supreme Court of that State imposing the discipline. Responding to the Show Cause Order issued by this Court, Rule 16–771(c),[6] it filed Petitioner's Response to Show Cause Order, in which it requested the Court to disbar the respondent, rather than impose the sanction imposed by the Delaware court. Attaching to the response the stipulation that the respondent entered into and noting the presence of four aggravating factors and only one mitigating, which the petitioner characterized as "dubious," the petitioner argued:

"2. The Respondent's stipulation reflects a pattern of dishonest conduct calculated to mislead not only the Court,

---

4. In a footnote, the Board noted: "Unlike *Sanders* and *Sandbach* the Respondent here has not been convicted criminally."

5. Maryland Rule 16–751(a) permits bar counsel to file a Petition for Disciplinary or Remedial Action in the Court of Appeals, "[u]pon approval of the [Attorney Grievance] Commission."

6. "(c) Show Cause Order. When a petition and certified copy of a disciplinary or remedial order have been filed, the Court of Appeals shall order that Bar Counsel and the attorney, within 15 days from the date of the order, show cause in writing based upon any of the grounds set forth in section (e) of this Rule why corresponding discipline or inactive status should not be imposed."

over a period of in excess of five years, but the disciplinary authorities charged with the investigation and prosecution of her misdeeds, as well as her clients.

"3. Petitioner contends that the conduct established by the reciprocal discipline of the supreme Court of Delaware and the Joint Stipulation between the Respondent and disciplinary counsel establishes misconduct which, in this state, warrants sufficiently different discipline. The gravity, prolonged pattern, and breadth of the Respondent's misconduct, most especially, but not limited to, her knowing and intentional misrepresentation to the Supreme Court of Delaware, disciplinary counsel, the court appointed auditor of her records, and her clients all combined to warrant disbarment under the opinions of this Court dealing with similar misconduct."

In the memorandum in support of its response, the petitioner focuses on and directs our attention to the many instances in which, as she stipulated, the respondent falsely and intentionally certified to the Supreme Court of Delaware, in the annual filings she was required to make, that she was timely filing and paying all federal, state and local payroll, gross receipts and income taxes, emphasizing that "[a]lmost from the inception of that requirement, the Respondent has knowingly and intentionally misrepresented her timely filing and payments of taxes to all taxing authorities to whom she had incurred ongoing obligations." These violations implicated, the petitioner observed, the respondent's candor and truthfulness, "two of the most important moral traits of a lawyer." (Quoting *Attorney Griev. Comm'n v. Myers*, 333 Md. 440, 449, 635 A.2d 1315, 1319 (1994)). Therefore, in the petitioner's view, they were the most serious. In that regard, it submitted:

"Without regard to the specific disposition appropriate to this Respondent's tax violations, the most serious of her offenses are found in her deceitful certifications to the Delaware Supreme Court covering up her long standing and protracted violations of Federal and State tax laws."

Those were not the only misrepresentations in which the respondent engaged, the petitioner pointed out. After being privately reprimanded, subject to being audited on a semi-annual basis for a period of two years, during those audits, the respondent, as she stipulated she did, provided the Office of Disciplinary Counsel, the auditor and the investigative auditor misleading information so "as to conceal her failure to file and/or pay various city, state and federal taxes by failing to respond accurately to inquiries relating to the filing and payment of those taxes." Yet another misrepresentation on which the petitioner relied occurred when the respondent falsely informed a client's mother that she had filed a post-conviction petition, knowing that she had not done so. Noting that the only mitigation in the case was that "the respondent had taken steps to acknowledge the wrongfulness of her conduct by admitting to 26 counts of violations of the Rules and Procedural Rules," the petitioner submits that it does not reach the level this Court has identified as sufficient to extenuate the sanction. It relies on *Attorney Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001), in which we stated:

> "[W]e reiterate once again the position we announced in *Kenney*. Moreover, we expound upon it by holding that, in cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as 'compelling extenuating circumstances,' any-thing less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct and that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent con-duct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise."

The respondent, of course and to no one's surprise, takes the opposite position. She urges quite strenuously that we defer to the Delaware Supreme Court. That court was, after all, she submits, fully apprised of the facts and circumstances—it knew of and reviewed the stipulation—and it was sanctioning a lawyer, whose principal practice was in Delaware.

This is, as indicated, a reciprocal discipline case. In such cases, although Maryland Rule 16–773(g), by its terms, limits challenges to the original adjudication in reciprocal discipline cases to "notice and opportunity to be heard" or "infirmity of proof," see *Attorney Griev. Comm'n v. Roberson*, 373 Md. 328, 818 A.2d 1059 (2003), that an order sanctioning an attorney following an adjudication in disciplinary proceedings conclusively establishes that the respondent engaged in misconduct, it being a final adjudication in a disciplinary proceeding, *Attorney Griev. Comm'n v. Gittens*, 346 Md. 316, 325, 697 A.2d 83, 88 (1997); *Attorney Griev. Comm'n v. Willcher*, 340 Md. 217, 221–222, 665 A.2d 1059, 1061 (1995); *Attorney Griev. Comm'n v. Sparrow*, 314 Md. 421, 550 A.2d 1150 (1989). See also *Attorney Griev. Comm'n v. Moore*, 301 Md. 169, 482 A.2d 497 (1984), either of the parties to the proceedings may show "why corresponding discipline or inactive status should not be imposed." Maryland Rule 16–773(c). That is the purpose of the requirement on the Court to issue a show cause order. *Id.* Moreover, the Rule prescribes the exceptional circumstances that will allow avoidance of the reciprocal discipline. Subsection (e) provides:

"(e) Exceptional Circumstances. Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:

"(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

"(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;

"(3) the imposition of corresponding discipline would result in grave injustice;

"(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or

"(5) the reason for inactive status no longer exists."

The petitioner relies on factor (4), that the conduct in this case warrants a substantially more severe—different—sanction.

This Court's treatment of the imposition of sanction aspect of reciprocal discipline cases is well settled. It was recently reiterated:

"We are prone, see *Attorney Griev. Comm'n v. Sabghir*, 350 Md. 67, 83, 710 A.2d 926, 934 (1998); *Attorney Griev. Comm'n v. Richardson*, 350 Md. 354, 365–66, 712 A.2d 525, 530–31 (1998), but not required, see *Attorney Griev. Comm'n v. Gittens*, 346 Md. 316, 324, 697 A.2d 83, 87 (1997), to impose the same sanction as that imposed by the state in which the misconduct occurred. Indeed, the Court is duty-bound to assess for itself the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission, *Gittens*, 346 Md. at 326, 697 A.2d at 88, to look not only to the sanction imposed by the other jurisdiction, but to the particular facts and circumstances of each case, the outcome being dependent upon the latter, but with a view toward consistent dispositions for similar misconduct. *Attorney Griev. Comm'n v. Willcher*, 340 Md. 217, 222, 665 A.2d 1059, 1061 (1995) (quoting *Attorney Griev. Comm'n v. Parsons*, 310 Md. 132, 142, 527 A.2d 325, 330 (1987)); *Attorney Griev. Comm'n v. Saul*, 337 Md. 258, 267–68, 653 A.2d 430, 434–35 (1995). We ordinarily will defer to the sanctioning State when the two States' purpose in disciplining counsel is the same." [*Gittens*,] 346 Md. at 327, 697 A.2d at 88.

*Attorney Griev. Comm'n v. Ruffin*, 369 Md. 238, 253–254, 798 A.2d 1139, 1148 (2002). See *Roberson*, 373 Md. at 355–56, 818 A.2d at 1076.

We shall defer to the disciplinary decision of the Supreme Court of Delaware. The goal of attorney discipline in Delaware, see *In re Hull,* 767 A.2d 197, 201 (Dela.2001) ("In Delaware, the paramount issue in any attorney discipline matter is the danger to the public that is ascertainable from an attorney's record of professional misconduct"), is the same as in Maryland, to protect the public. See *Attorney Griev. Comm'n v. Braskey,* 378 Md. 425, 442, 836 A.2d 605, 616 (2003). In addition, the respondent essentially is a Delaware lawyer; that is where she lives and where she principally practices. More important, the misrepresentations upon which the petitioner principally relies are misrepresentations made to the Supreme Court of Delaware, in certifications contained in annual filings that Court requires to be made in support of its oversight of the administration of justice in that State. That Court was fully informed of the facts and circumstances of the respondent's conduct. In addition to the stipulation, which is quite detailed and explicit, not only as to the violations but with respect to the respondent's admissions, the court reviewed the Report and Recommendation of Sanction of the Board of Professional Responsibility. That Report, which accepted the facts recited in the stipulation, was prepared only after the Board conducted a hearing to determine the appropriate sanction to recommend. The Board, in addition to discussing the considerations that were taken into account in fashioning the sanction recommendation, painstakingly analyzed the cases bearing on the proper sanction and that formed the basis for the recommendation it made.

Having been presented with the Report and the recommendation for a three year suspension, the Supreme Court of Delaware adopted the Report and accepted the recommendation, but only after it had "considered the matter carefully." That it had a firm grasp of the facts and the gravity of the situation is shown by the court's recitation of the admissions the respondent made, noting particularly that "she falsely represented to the Delaware Supreme Court, in her Certificates of Compliance filed between 1996 and 2000, that she had timely paid all federal, state, and local payroll, gross receipts

and income taxes [and] concealed her failure to pay various federal, state and local taxes from the ODC and its auditor." In addition, the court referred to the aggravating factors to which the parties stipulated, indicating that the sanction was appropriate "in light of the[ir] presence."

We conclude that, where a respondent's most serious misconduct involves misrepresentations, and those misrepresentations are to the Supreme Court of the State in which he or she principally practices and that sanctioned him or her, it ordinarily is appropriate to defer to that court, notwithstanding that the sanction it imposed is not identical to the one that may have been imposed by this Court were the same conduct to have occurred in this State.

Accordingly, we shall suspend the respondent for a period of three years, concurrent with the suspension in Delaware.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CAROLINE P. AYRES–FOUNTAIN.