991 A.2d 51

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Jeffrey Keith GORDON.

Misc. Docket AG No. 31, Sept. Term, 2009.

Court of Appeals of Maryland.

March 16, 2010.

48

Gail D. Kessler, Assistant Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), Crownsville, for petitioner.

Jeffrey Keith Gordon, of Austin, Texas, for respondent.

Argued before BELL, C.J., and HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, J.

This is a reciprocal discipline action concerning Jeffrey Keith Gordon, ("Gordon" or "Respondent"), who was admitted to the Bar of this Court on December 18, 1990,[1] and to the State Bar of Texas in 1996. On May 5, 2009, a Texas Evidentiary Panel for State Bar District No. 09A3 of the State Bar of Texas[2] imposed a Judgment of Public Reprimand against Gordon after determining that he violated Rules 3.03(a)(1),[3] 3.03(a)(5),[4] and 8.04(a)(3)[5] of the Texas Disciplinary Rules of Professional Conduct.

---

1. Jeffrey Keith Gordon graduated in 1990 and was admitted to the Maryland Bar, but he has never lived nor practiced in Maryland as he was an employee of a federal agency. Several years later, he moved to Texas, and was admitted to practice there. When questioned at oral argument regarding why he was a member of the Maryland Bar, Gordon replied:

   In all due respect, I kept my Maryland Bar membership, [because] it wasn't that expensive to keep up. The CLE requirements are far more significant in Texas, and I mean, that's the honest [truth] why I kept it. I have it on my resume.

2. Pursuant to Rule 5.02 of the Texas Rules of Disciplinary Procedure (TRDP), the Chief Disciplinary Counsel for the State Bar of Texas reviews information coming to the attention of the Texas Commission for Lawyer Discipline and determines whether the information satisfies just cause to file a complaint against a lawyer barred in Texas. Once the Chief Disciplinary Counsel determines just cause exists, a Respondent is given written notice of the allegations and rule violations complained of.

   Rule 2.15 of the TRDP states that a lawyer facing a complaint of a violation of the Texas Disciplinary Rules of Professional Conduct may elect to have the complaint heard by an evidentiary panel, which is appointed by the chair of the Grievance Committee for the State Bar of Texas, or have the complaint heard in a district court with or without a jury. In this action, Jeffrey Keith Gordon elected to have his complaint heard before an evidentiary panel, and neither he, nor the Commission for Lawyer Discipline, appealed the panel's sanction.

3. Texas Disciplinary Rule of Professional Conduct 3.03(a)(1) ("Candor Toward the Tribunal") provides:
   (a) A lawyer shall not knowingly:
   (1) make a false statement of material fact or law to a tribunal;

4. Texas Disciplinary Rule of Professional Conduct 3.03(a)(5) ("Candor Toward the Tribunal") provides:
   (a) A lawyer shall not knowingly:

On August 10, 2009, the Attorney Grievance Commission ("Petitioner" or "Bar Counsel"), acting pursuant to Rules 16–751(a)(2) [6] and 16–773(b),[7] filed a Petition for Disciplinary or Remedial Action against Gordon to which a certified copy of the State Bar of Texas' Judgment of Public Reprimand was attached. Bar Counsel incorporated by reference into its Petition the findings of fact of the Texas Evidentiary Panel:

In October 2005, Respondent was representing clients on a breach of contract claim. Respondent requested leave to supplement his summary judgment record and attached what appeared to be an original signature page signed by Respondent's client ("the Client"), in the year 2000. The document was not the original signature page but instead was one that had been signed by the Client the night before the 2005 summary judgment hearing. Whether the Client

---

\* \* \*

(5) offer or use evidence that the lawyer knows to be false.

**5.** Texas Disciplinary Rule of Professional Conduct 8.04(a)(3) ("Misconduct") provides:

(a) A lawyer shall not:

\* \* \*

(3) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

**6.** Rule 16–751(a)(2) provides:

(a) **Commencement of disciplinary or remedial action.**

\* \* \*

(2) Conviction of crime; reciprocal action. If authorized by Rule 16–771(b) or 16–773(b), Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals without prior approval of the Commission. Bar Counsel promptly shall notify the Commission of the filing. The Commission on review may direct the withdrawal of a petition that was filed pursuant to this subsection.

**7.** Rule 16–773(b) provides:

(b) **Petition in Court of Appeals.** Upon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined or placed on inactive status based on incapacity, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2). A certified copy of the disciplinary or remedial order shall be attached to the Petition, and a copy of the Petition and order shall be served on the attorney in accordance with Rule 16–753.

had signed the contract in 2000 was a material issue in the litigation. The tendered signature page was challenged by the opposing party as newly "manufactured" evidence at the hearing on the motion for summary judgment. Respondent did not inform the Court at that time that the tendered signature page had just been signed by the Client. Respondent thereafter filed pleadings falsely suggesting that this document was the original signature page. Six weeks later, in response to discovery, Respondent and the Client disclosed to opposing counsel that the Client had signed the signature page at issue on the eve of the summary judgment hearing and also disclosed the recently found original signature page from 2000. But Respondent did not inform the Court of these facts. The Court granted Respondent's Motion for Leave to Supplement the Record, but denied the Motion for Partial Summary Judgment. The case went to trial in 2007, at which time the Client testified during cross-examination that he had signed the tendered signature page just prior to Respondent submitting it as evidence in 2005. When questioned by the Court, Respondent admitted that the Client had signed the document right before the summary judgment hearing.

In his petition, Bar Counsel relied upon the Texas Evidentiary Panel's conclusion that Gordon violated Rules 3.03(a)(1), 3.03(a)(5), and 8.04(a)(3) of the Texas Disciplinary Rules of Professional Conduct, which correspond to Rules 3.3(a)(1),[8] 3.3(a)(4),[9] and 8.4(c)[10] of the Maryland Rules of Professional

---

**8.** Rule 3.3(a)(1) ("Candor Toward the Tribunal") of the Maryland Rules of Professional Conduct provides:

(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.

**9.** Rule 3.3(a)(4) ("Candor Toward the Tribunal") of the Maryland Rules of Professional Conduct provides:

(a) A lawyer shall not knowingly:
* * *

Conduct ("MRPC" or "Rule"). Bar Counsel requested that we issue a Show Cause Order.

On August 10, 2009, we issued a Show Cause Order pursuant to Rule 16–773(e).[11] Bar Counsel responded, asked that reciprocal discipline not be imposed, and requested that we order a ninety day suspension, or in the alternative, enter an order designating a judge to hold a hearing in accordance with Rule 16–757.[12] Petitioner's rationale was that, "[i]n Maryland,

---

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

**10.** Rule 8.4(c) ("Misconduct") of the Maryland Rules of Professional Conduct provides:

It is professional misconduct for a lawyer to:
* * *
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

**11.** Rule 16–773(e) provides:

(e) **Exceptional circumstances.** Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:
(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;
(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;
(3) the imposition of corresponding discipline would result in grave injustice;
(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or
(5) the reason for inactive status no longer exists.

**12.** Rule 16–757 provides:

(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.

the submission of false documents and/or assisting a client in the commission of a fraud warrants more than a reprimand, especially when the lawyer fails to take any mitigating or remedial action."

In Gordon's response to the Show Cause Order, in his Reply, and in subsequent pleadings, he stated that his misconduct warranted a reciprocal sanction of a public reprimand.[13] He stated that he "accepted full responsibility for [his] actions from the very beginning of the Texas disciplinary proceeding," and that he knew his "actions were wrong and inappropriate and a violation of [his] duties as an officer of the court." He argued that reciprocal discipline must be ordered, because Bar Counsel did not demonstrate, by clear and convincing evidence, that exceptional circumstances under Rule 16–773(e) [14]

(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

(c) **Transcript.** The petitioner shall cause a transcript of the hearing to be prepared and included in the record.

13. Gordon argued that Bar Counsel should be bound by his earlier recommendation of a reprimand in a Joint Petition for Reprimand by Consent. We had denied the Joint Petition and issued a Show Cause Order.

14. Rule 16–773(e) provides:

(e) **Exceptional circumstances.** Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:

(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;

existed. He also argued that while his actions in the Texas summary judgment proceeding were misleading and constituted professional misconduct, his actions did not constitute fraud, for which the Texas Bar would have imposed a more significant sanction. He stated that his disclosure of the newly re-signed signature page to opposing counsel six weeks after the summary judgment hearing, was a mitigating and remedial measure.

Gordon also argued that no exceptional circumstances existed because 1) the Texas Disciplinary procedure was neither lacking in notice or a deprivation of his due process rights, 2) there was no infirmity of proof during the underlying proceedings establishing professional misconduct, 3) a reprimand would not result in grave injustice, but a more severe sanction would result in a grave injustice, 4) the State Bar of Texas treated the matter seriously and diligently, and Maryland should defer to the Texas Bar's decision.[15]

### Discussion

In reciprocal discipline cases, pursuant to Rule 16–773(g), we generally treat the factual findings and conclusions

---

(3) the imposition of corresponding discipline would result in grave injustice;

(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or

(5) the reason for inactive status no longer exists.

**15.** Gordon also requested that this disciplinary proceeding be dismissed in exchange for his resignation from the Maryland Bar, because, he argues, a suspension from the Maryland Bar "will likely result in [his] temporary suspension from the three federal court districts in which [he is] currently a member." We will not entertain Gordon's resignation request, because Maryland does not allow attorneys to resign during the pendency of disciplinary proceedings. *See* Rule 16–775(b) ("An attorney may not resign while the attorney is the subject of a disciplinary investigation, action, or proceeding involving allegations of professional misconduct."); *see also Attorney Grievance v. Scroggs*, 387 Md. 238, 252 n. 17, 874 A.2d 985, 994 n. 17 (2005) ("[T]he availability to an attorney to resign during the pendency of disciplinary proceedings does not exist in Maryland.").

of law from the original jurisdiction as conclusive evidence of an attorney's misconduct:

> (g) **Conclusive effect of adjudication.** Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed.

*See also Attorney Grievance v. Haas,* 412 Md. 536, 988 A.2d 1033 (2010); *Attorney Grievance v. Whitehead,* 390 Md. 663, 669, 890 A.2d 751, 754 (2006). We address, then, what discipline to impose—a reprimand consistent with the Texas sanction or a more serious alternative, because of the existence of "exceptional circumstances" under Rule 16–773(e).

■ We have often stated the well established principle that in reciprocal discipline cases, we are prone or inclined, but not required, to impose the same sanction the original jurisdiction imposed. *See Attorney Grievance v. Whitehead,* 390 Md. 663, 671, 890 A.2d 751, 756 (2006); *Attorney Grievance v. Weiss,* 389 Md. 531, 546, 886 A.2d 606, 615 (2005). As we explained in *Whitehead,* 390 Md. at 668, 890 A.2d at 754, our rules state that we *may* impose "corresponding discipline," not that we *shall* impose "identical discipline." *See* Rule 16–773(f).[16] Our use of the words "inclined," "prone,"

---

**16.** Rule 16–773(f) ("Action by Court of Appeals") states that we *"may* immediately impose corresponding discipline," *"may* enter an order designating a judge [for a hearing]," or *"may* enter any other appropriate order." (emphasis added):

> Upon consideration of the petition and any answer to the order to show cause, the Court of Appeals may immediately impose corresponding discipline or inactive status, may enter an order designating a judge pursuant to Rule 16–752 to hold a hearing in accordance

"tend to," and "often," explicitly indicate our reluctance to adopt a blanket rule of reciprocity, *Weiss,* 389 Md. at 547, 886 A.2d at 615. We are required to analyze each case individually and decide whether to deviate from the original jurisdiction's sanction. *Id.* at 547, 886 A.2d at 615; *see also Attorney Grievance v. Scroggs,* 387 Md. 238, 254, 874 A.2d 985, 995 (2005) ("We are required to assess for ourselves the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission.").

We, generally, follow the original jurisdiction's sanction "when the purpose for the discipline in the original jurisdiction is congruent with ours." *Weiss,* 389 Md. at 547, 886 A.2d at 615. Our purpose in attorney discipline cases is the protection of the public, rather than the punishment of the erring attorney. *Id.,* citing *Attorney Grievance v. Steinberg,* 385 Md. 696, 703, 870 A.2d 603, 607 (2005) (other citations omitted). Nevertheless, we find that although most jurisdictions have the same purpose as we do, "[w]e have recognized that the public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated...." *Attorney Grievance v. Sperling,* 380 Md. 180, 191, 844 A.2d 397, 404 (2004) (quotations omitted).

Obviously, in so demonstrating, we are concerned with what sanction a lawyer in Maryland could expect in response to similar conduct, were it to have occurred in Maryland. We have consistently stated that when considering an appropriate sanction in a reciprocal discipline case, we are duty bound to look "not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct." *Weiss,* 389 Md. at 548, 886 A.2d at 616, quoting

with Rule 16–757, or may enter any other appropriate order. The provisions of Rule 16–760 apply to an order under this section that disbars or suspends an attorney or that places the attorney on inactive status.

*Attorney Grievance Comm'n v. Parsons & Reback,* 310 Md. 132, 142, 527 A.2d 325, 330 (1987). In this regard, and in an effort to avoid inconsistent sanctions, we need not follow the original jurisdiction's sanction when our cases demonstrate that we would apply a different sanction, had the conduct occurred or the case originated here. *Whitehead,* 390 Md. at 673, 890 A.2d at 757. "[W]e must balance our tendency to follow the original jurisdiction's sanction under our reciprocal discipline doctrine, against our prior cases and the sanctions imposed upon members of this Bar for similar misconduct committed in this jurisdiction, always with a view towards the protection of the public." *Weiss,* 389 Md. at 546, 886 A.2d at 614.

All this being said, we acknowledge that there have been cases in which we have deferred to the sanction of the original jurisdiction, despite the different sanction we may have imposed had the proceedings originated in this jurisdiction, *see Attorney Grievance v. Ayres–Fountain,* 379 Md. 44, 58–59, 838 A.2d 1238, 1246–47 (2003) (imposing identical three year suspension sanction as Delaware Supreme Court for the lawyer's knowing misrepresentations to that court regarding her certifications in annual tax filings even though the sanction that may have been imposed by this Court would not have been identical had the conduct occurred in Maryland); *Attorney Grievance Comm'n v. Gittens,* 346 Md. 316, 327, 697 A.2d 83, 88–89 (1997) (imposing identical indefinite suspension sanction of the District of Columbia Court of Appeals on an attorney who was convicted of theft of client funds from his escrow account citing that deference should be paid to the District of Columbia court).

We have, nevertheless, also declared that we have become "much less lenient towards any misconduct involving theft, misappropriation, fraud, or deceit." *Weiss,* 389 Md. at 551, 886 A.2d at 617. When attorney misconduct has been more serious, and "when the conduct involved is of such nature that it would not be tolerated from any member of the Bar in this State if the conduct occurred here," we have deviated from the original jurisdiction's sanction and imposed a more severe

sanction. *Id.* at 551–52, 886 A.2d at 618, citing *Attorney Grievance v. Dechowitz,* 358 Md. 184, 191, 193, 747 A.2d 657, 660–61 (2000) (substituting disbarment for California's sanction of suspension, after the attorney was convicted of possession of marijuana with intent to distribute); *Attorney Grievance v. White,* 354 Md. 346, 367, 731 A.2d 447, 459 (1999) (imposing disbarment instead of indefinite suspension for attorney's false testimony under oath). *See Attorney Grievance v. Beatty,* 409 Md. 11, 18, 972 A.2d 840, 843–44 (2009) (imposing indefinite suspension in a reciprocal discipline case on an attorney convicted of fourth degree stalking in New Jersey in spite of lesser sanction of three month suspension imposed by the Supreme Court of that state).

In the present case, the prohibited conduct involved Respondent who, while representing a client in a breach of contract case, submitted what appeared to be the original signature page of a year 2000 contract, but was, instead, a replacement signature page signed by his client the night before the 2005 summary judgment hearing. The existence of the signature was a material issue in the litigation, and Respondent did not inform the court that the signature page had been signed five years after the fact and during litigation involving the contract, but rather, filed pleadings falsely suggesting that the page represented the original. Six weeks later, Respondent and his client disclosed to opposing counsel during discovery, but not to the court, that the signature page had been signed on the eve of summary judgment and also disclosed the original signature page from 2000. This conduct is clearly violative of MRPC 3.3(a)(1), 3.3(a)(4), and 8.4(c).

To support the sanction of a reprimand, however, Gordon cites *Attorney Grievance Comm'n v. Heinze,* 293 Md. 193, 442 A.2d 570 (1982), in which F. George Heinze, III, told his client, another attorney, that he had filed suit in a collection case when, in fact, he had not. We concluded that this misrepresentation violated Disciplinary Rule 1–102(A)(4) of the Code of Professional Responsibility, the precursor to Rule

8.4(c), which provided that a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation," and reprimanded Heinze. *Heinze,* 293 Md. at 196–97, 442 A.2d at 572. In so doing, we acknowledged that Heinze's conduct did not rise to the level of seriousness as that of the attorneys in *Attorney Grievance Comm'n v. Bailey,* 286 Md. 630, 408 A.2d 1330 (1979), and *Attorney Grievance Comm'n v. Levitt,* 286 Md. 231, 406 A.2d 1296 (1979), in which misrepresentations were made to a court. *See, e.g., Attorney Grievance Comm'n v. Stancil,* 296 Md. 325, 463 A.2d 789 (1983) (attorney reprimanded for misrepresentations made to Bar Counsel); *Attorney Grievance Comm'n v. O'Neill,* 285 Md. 52, 400 A.2d 415 (1979) ("Neophyte lawyer" reprimanded for making false statements to a judge, an assistant state's attorney, and a probation agent in the same day, but who immediately informed the judge of his deceit and expressed remorse to Bar Counsel).

Bar Counsel, in support of his requests that we impose "substantially different discipline in Maryland than that which [Respondent] received in Texas," because Gordon's conduct warranted "substantially different discipline," in accordance with Rule 16–773(e), bases his argument upon three Attorney Grievance cases, in which we ordered a period of suspension, *i.e., Attorney Grievance v. Tanko,* 408 Md. 404, 969 A.2d 1010 (2009) (suspending lawyer for sixty days for knowingly filing expungement petitions that were not ripe), *Attorney Grievance Comm'n v. Rohrback,* 323 Md. 79, 591 A.2d 488 (1991) (suspending lawyer for forty-five days for misrepresenting to a probation officer that his client was using a false name), and *Attorney Grievance Comm'n v. Maxwell,* 307 Md. 600, 516 A.2d 570 (1986) (suspending lawyer for ninety days for knowingly making a false notarization and falsely witnessing a deed).

In *Tanko,* Louis P. Tanko, Jr., was charged with numerous Rule violations, including Rules 3.3 and 8.4. We affirmed a hearing judge's conclusions that Tanko violated Rules 3.3(a)

and 8.4(d) [17] when he filed expungement petitions in the District Court for charges he believed, although negligently and mistakenly, were eligible for expungement in an attempt to have the petitions "slip by" the court and be granted. *Tanko*, 408 Md. at 423–26, 969 A.2d at 1022–23. Tanko filed the petitions with lines drawn through words indicating that at least three years had passed since the disposition in the underlying matter, knowing that less than three years had elapsed. We held that Tanko's misleading actions were clearly violative of the Rules, but because he lacked any prior disciplinary action and his actions were mitigated by a misunderstanding of the relevant case and statutory law, his violations warranted a sixty day suspension instead of disbarment. *Id.* at 426, 969 A.2d at 1023–24.

In *Rohrback*, Maynard R. Rohrback's client, Lloyd Francis Asbury, was arrested on several different occasions and charged with DUI and DWI; and on one occasion, he had given a false name, Lloyd Francis Boland, to one of the arresting officers. *Rohrback*, 323 Md. at 83–84, 591 A.2d at 489–90. Rohrback, though knowing Asbury was misrepresenting himself as another to a probation officer charged with developing his presentence investigation, accompanied him to the meeting with the officer. We stated that Rohrback's "mere act of accompanying Asbury as Boland" to a meeting with a probation officer "served as Rohrback's confirmation that Boland was the client's true name," *id.* at 99, 591 A.2d at 497–98, and we held that Rohrback's actions were tantamount to knowingly assisting in his client's fraud, and violative of Rule 4.1 [18] requiring disclosure of material facts to third

---

**17.** Rule 8.4(d) ("Misconduct") of the Maryland Rules of Professional Conduct provides:

It is professional misconduct for a lawyer to:

\* \* \*

(d) engage in conduct that is prejudicial to the administration of justice;

**18.** Rule 4.1 ("Truthfulness in Statements to Others") of the Maryland Rules of Professional Conduct provides:

parties. Although Rohrback had never before committed any professional infractions, we imposed a forty-five day suspension. *Id.* at 101, 591 A.2d at 499.

In *Maxwell*, Edward Thomas Maxwell, Jr., while representing two individuals charged with drug trafficking in Florida, delivered a deed to his client's bail bondsman with the signature of "Ronald Jaxon," and a notarization by Maxwell. In fact, although "Ronald Jaxon" did not exist, Maxwell knowingly witnessed one of his clients signing the deed as Jaxon. *Maxwell*, 307 Md. at 602, 516 A.2d at 571. The hearing judge concluded that Maxwell made misrepresentations and false statements in violation of former Rules 1–102(A)(4), 1–102(A)(1), and 7–102(A)(5) of the Code of Professional Responsibility.[19] In determining his sanction, we noted that although we could not "condone deliberate falsification of a solemn document by an experienced attorney," a ninety day sanction was appropriate after considering Maxwell's veteran experience of thirty years, unblemished disciplinary record, expressed remorse for his actions, and lack of harm resulting from his conduct. *Id.* at 605, 516 A.2d at 572.

---

(a) In the course of representing a client a lawyer shall not knowingly:
(1) make a false statement of material fact or law to a third person; or
(2) fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.
(b) The duties stated in this Rule apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

**19.** Rule 1–102(A)(4) of the Code of Professional Responsibility was the predecessor to Rule 8.4(c) of the Maryland Rules of Professional Conduct, and provided:

A lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

Rule 1–102(A)(1) of the Code of Professional Responsibility was the predecessor to Rule 8.4(a) of the Maryland Rules of Professional Conduct, and provided:

A lawyer shall not ... [v]iolate a disciplinary rule.

Rule 7–102(A)(5) of the Code of Professional Responsibility was the predecessor to Rule 4.1(a)(1), and provided:

In his representation of a client, a lawyer shall not ... [k]nowingly make a false statement of law or fact.

Another case addressing issues of misrepresentations made by an attorney to a tribunal is *Attorney Grievance Comm'n v. Parsons & Reback,* 310 Md. 132, 527 A.2d 325 (1987). In *Parsons,* we addressed the appropriate sanction for two lawyers in a reciprocal discipline case who falsified their client's signature on a complaint for divorce and caused it to be notarized and filed in the Superior Court for the District of Columbia, without the consent or knowledge of their client, after the original complaint had been dismissed. Despite the attorneys' admission of wrongdoing and their expression of remorse, we imposed a ninety day suspension. We were mindful that although the misconduct was intended to assist the client without personal gain, this "serious transgression" did not exempt them from discipline, and a suspension was necessary "in order to protect the public from misconduct of this sort." *Id.* at 142–43, 527 A.2d at 330.

In other circumstances in which lawyers have been untruthful to a tribunal, we have imposed suspensions greater than ninety days, as well as disbarment. *See, e.g., Attorney Grievance v. McClain,* 406 Md. 1, 20–21, 956 A.2d 135, 146 (2008) (attorney disbarred for intentionally dishonest conduct and systematic effort to mislead the court); *Attorney Grievance v. Siskind,* 401 Md. 41, 75–76, 930 A.2d 328, 347–48 (2007) (attorney disbarred for dishonesty, fraud, and deceit toward a tribunal, in the absence of any mitigating factors); *Attorney Grievance v. Goodman,* 381 Md. 480, 483, 499, 850 A.2d 1157, 1159, 1168 (2004) (attorney disbarred for filing pleadings and signing another attorney's name without that attorney's knowledge or permission); *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 449–50, 635 A.2d 1315, 1320 (1994) (attorney with a history of sanctions for misconduct was disbarred for intentional, self-serving misrepresentations to a District Court judge regarding his traffic record); *Attorney Grievance Comm'n v. Bailey,* 286 Md. 630, 635–36, 408 A.2d 1330, 1333 (1979) (attorney received three year suspension for misrepresentations to a court regarding funds that were supposedly placed in an escrow account, but Court noted he would have been disbarred had the evidence shown he intended "to

steal or consciously misappropriate funds"); *Attorney Grievance Comm'n v. Levitt,* 286 Md. 231, 239–40, 406 A.2d 1296, 1300 (1979) (attorney received one year suspension for knowingly making a false statement to a judge).

We conclude that because Gordon's misrepresentations to the court in violation of Rules 3.3(a)(1), 3.3(a)(4), and 8.4(c) of the MRPC would warrant "substantially different discipline" in Maryland, "exceptional circumstances" do exist under Rule 16–773(e). The most difficult issue, however, is which of the myriad suspension periods to impose, which, appropriately, generally rests on what mitigation is found. In this regard, mitigating factors may include:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance v. Sweitzer,* 395 Md. 586, 599, 911 A.2d 440, 448 (2006) (citations omitted).

In *Maxwell,* for example, we imposed a ninety day suspension after recognizing as mitigation that the attorney was remorseful, admitted using lousy judgment, had no prior record of professional misconduct, and engaged in deceit that was not self serving. *Maxwell,* 307 Md. at 603–05, 516 A.2d at 571–72. In *Tanko,* we imposed a sixty day suspension for his misleading, and perhaps, negligent, filing of expungement petitions to mislead the court, while noting mitigation of Tanko's lack of prior disciplinary action, and his misunderstanding of the relevant case and statutory law. *Tanko,* 408 Md. at 425–26, 969 A.2d at 1023–24. In *Rohrback,* we imposed a forty-five day suspension after concluding that "the ultimate purpose of the fraud which Rohrback knowingly assisted was

to deceive the District Court in Baltimore City concerning [his client's] criminal record," and recognizing as mitigation that Rohrback did not originally create the deception, did not receive a fee, and had never before committed professional misconduct in his twenty years of practice. *Rohrback,* 323 Md. at 101, 591 A.2d at 499.

In this case, Respondent has no disciplinary record from his twenty years of practicing law, he has accepted full responsibility and expressed remorse for his actions, the misrepresentation does not appear to be part of a pattern of misconduct, and his actions were not financially self-serving. Gordon's conduct is most akin to that of the attorney in *Rohrback,* and we, therefore, hold that Gordon's misconduct warrants a forty-five day suspension.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16–761 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST JEFFREY KEITH GORDON.**

BELL, C.J., Dissents.

Dissenting Opinion by BELL, C.J.

For the reasons stated in my dissents in *Attorney Griev. Comm'n v. Weiss,* 389 Md. 531, 556–569, 886 A.2d 606, 620–628 (2005) and *Attorney Griev. Comm'n v. Whitehead,* 390 Md. 663, 684–696, 890 A.2d 751, 763–771 (2006), I dissent from the majority's refusal to impose reciprocal discipline in this case. If it were not crystal clear from the majority opinions in the aforementioned cases, this case unmistakably confirms the accuracy of the observations I made in each case, that the majority does not ascribe full value or meaning to Maryland Rule 16–773,[1] no longer reading it as requiring that, in a

------

1. Maryland Rule 16–773 provides, in its entirety:

"(a) Duty of Attorney. An attorney who in another jurisdiction (1) is disbarred, suspended, or otherwise disciplined, (2) resigns from the bar while disciplinary or remedial action is threatened or pending in that jurisdiction, or (3) is placed on inactive status based on incapacity shall inform Bar Counsel promptly of the discipline, resignation, or inactive status.

"(b) Petition in Court of Appeals. Upon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined or placed on inactive status based on incapacity, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2). A certified copy of the disciplinary or remedial order should be attached to the Petition, and a copy of the Petition and order shall be served on the attorney in accordance with Rule 16–753.

"(c) Show cause order. When a petition and certified copy of a disciplinary or remedial order have been filed, the Court of Appeals shall order that Bar Counsel and the attorney, within 15 days from the date of the order, show cause in writing based upon any of the grounds set forth in section (e) of this Rule why corresponding discipline or inactive status should not be imposed.

"(d) Temporary suspension of attorney. When the petition and disciplinary or remedial order demonstrate that an attorney has been disbarred or is currently suspended from practice by final order of a court in another jurisdiction, the Court of Appeals may enter an order, effective immediately, suspending the attorney from the practice of law, pending further order of Court. The provisions of Rule 16–760 apply to an order suspending an attorney under this section.

"(e) Exceptional circumstances. Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:

"(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

"(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;

"(3) the imposition of corresponding discipline would result in grave injustice;

"(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or

"(5) the reason for inactive status no longer exists.

"(f) Action by Court of Appeals. Upon consideration of the petition and any answer to the order to show case, the Court of Appeals may immediately impose corresponding discipline or inactive status, may enter an order designating a judge pursuant to Rule 16–752 to hold a hearing in accordance with Rule 16–757, or may enter any other appropriate order. The provisions of this Rule 16–760 apply to an order under this section that disbars or suspends an attorney or that places the attorney on inactive status.

"(g) Conclusive effect of adjudication. Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional conduct or is incapacitat-

reciprocal discipline case, the discipline imposed by this Court correspond, or be equivalent, to that imposed by the initiating jurisdiction. *See* Blacks Law Dictionary 1384 (9th ed.2009) (defining "reciprocal" to mean "directed to each toward the other or others; . . . . 3. Corresponding; equivalent . . . ."); *see also Whitehead,* 390 Md. at 689, 890 A.2d at 766 (citing Concise Oxford Dictionary, (9th ed.1995) (defining "corresponding" to mean "to be analogous or similar; to agree in amount, position, etc.; to be in harmony or agreement.")). In *Weiss,* rejecting the majority's conclusion that a result in the originating jurisdiction different from that which would have been reached in this State sufficed to make the situation exceptional or to justify substantially different discipline, I offered: "If that is all that is required to demonstrate exceptional circumstances, then there is no reason for reciprocal discipline; it really is meaningless." 389 Md. at 566, 886 A.2d at 627. In *Whitehead,* commenting on, and analyzing the effect of, the majority's "single-minded focus upon internal consistency," 390 Md. at 695, 890 A.2d at 770, concluding that such consistency "at the same time . . . fosters and even exacerbates the inconsistency, in reciprocal discipline cases, between the sanctions imposed by this Court and the reciprocal states," *id,* I asked rhetorically, "what . . . is the purpose, then, of Rule 16–773." *Id.* I further concluded:

———

> ed is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed.
> "(h) Effect of stay in other jurisdiction. If the other jurisdiction has stayed the discipline or inactive status, any proceedings under this Rule shall be deferred until the stay is no longer operative and the discipline or inactive status becomes effective."

"to allow internal consistency to override the Rule itself, again, makes our reciprocal discipline framework utterly and totally superfluous and meaningless."

*Id.*

Before *Weiss,* this Court ordinarily would—"[is] prone," *see Attorney Griev. Comm'n v. Ayres–Fountain,* 379 Md. 44, 57, 838 A.2d 1238, 1246 (2003)—, to, and did, impose corresponding or equivalent sanctions in reciprocal discipline cases, although not required to do so. *Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 325, 697 A.2d 83, 88 (1997). This is because the rule was:

"When the Court considers the appropriate sanction in a case of reciprocal discipline, we look not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct."

*Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 222, 665 A.2d 1059, 1061 (1995) (quoting *Attorney Griev. Comm'n v. Parsons,* 310 Md. 132, 142, 527 A.2d 325, 330 (1987)). Then, for sanctioning purposes, important factors for the Court to consider were the location of the attorney's practice, where the misconduct actually occurred, and the seriousness with which the originating jurisdiction treats the misconduct. *Ayres–Fountain,* 379 Md. at 57, 838 A.2d at 1246. Exemplary of this approach is *Ayres–Fountain, supra.* Our application of these informing factors and our explication of their relevance in that real and concrete factual setting are instructive on the issue of the proper sanction in this case. In *Ayres–Fountain,* we accepted, as our own, the sanction imposed on Ayres–Fountain by the Supreme Court of Delaware, even though we recognized that it likely was not identical to one that this Court may have imposed had the matter been initiated in Maryland. Explaining why, we said:

"the respondent essentially is a Delaware lawyer; that is where she lives and where she principally practices. More important, the misrepresentations upon which the petitioner

principally relies are misrepresentations made to the Supreme Court of Delaware, in certifications contained in annual filings that Court requires to be made in support of its oversight of the administration of justice in that State. That Court was fully informed of the facts and circumstances of the respondent's conduct. In addition to the stipulation, which is quite detailed and explicit, not only as to the violations but with respect to the respondent's admissions, the court reviewed the Report and Recommendation of Sanction of the Board of Professional Responsibility. That Report, which accepted the facts recited in the stipulation, was prepared only after the Board conducted a hearing to determine the appropriate sanction to recommend. The Board, in addition to discussing the considerations that were taken into account in fashioning the sanction recommendation, painstakingly analyzed the cases bearing on the proper sanction and that formed the basis for the recommendation it made.

"Having been presented with the Report and the recommendation for a three year suspension, the Supreme Court of Delaware adopted the Report and accepted the recommendation, but only after it had 'considered the matter carefully.' That it had a firm grasp of the facts and the gravity of the situation is shown by the court's recitation of the admissions the respondent made, noting particularly that 'she falsely represented to the Delaware Supreme Court, in her Certificates of Compliance filed between 1996 and 2000, that she had timely paid all federal, state, and local payroll, gross receipts and income taxes [and] concealed her failure to pay various federal, state and local taxes from the ODC and its auditor.' In addition, the court referred to the aggravating factors to which the parties stipulated, indicating that the sanction was appropriate 'in light of their presence.' "

*Ayres–Fountain,* 379 Md. at 58–59, 838 A.2d at 1246–47.

In this case, Jeffrey Keith Gordon, the respondent, is a Texas attorney, who, although admitted to the Bar in this State, has never practiced in this State. The misconduct for

which he was sanctioned by Texas occurred in Texas, during litigation and consisted of a misrepresentation of a material fact at issue in the litigation and actions taken in furtherance of that fact prior to his disclosure of the misrepresentation some six weeks after he made it. It having been determined that the misconduct was violative of the Texas counterpoint to the Maryland Rules of Professional Conduct requiring candor toward a tribunal and proscribing "conduct involving dishonesty, fraud, deceit or misrepresentation," the Texas Bar, at the conclusion of disciplinary proceedings, reprimanded the respondent.

The majority does not contend that the Bar of Texas takes attorney discipline less seriously than do we or that the purpose of such discipline in Texas is different from the purpose—the protection of the public—for which we pursue such discipline. *See generally Attorney Griev. Comm'n v. Gordon,* 413 Md. 46, 56, 991 A.2d 51, 56–57. No matter, the majority, relying on *Weiss* and *Whitehead, id.* at 55–56, 56–57, 991 A.2d at 56, 57, declares that sanction insufficient. *Id.* at 63–64, 991 A.2d at 61. Noting that we would impose, in misrepresentation cases initiated in Maryland, a different sanction, *id.* at 59–63, 991 A.2d at 58–61, it suspends the respondent for a period of forty-five days, *id.* at 64, 991 A.2d at 61, presumably concluding that the sanction is "substantially different" from the reprimand imposed by Texas. *Id.* at 63, 991 A.2d at 61.

In *Weiss,* noting that our cases, at least up to that time, expressed a preference for consistency among States when dispensing discipline in reciprocal discipline cases, specially when there is no divergence in the purpose of the discipline, I lamented that "[the majority's] rationale for refusing deference in th[at] case can only be that the [originating court] did not exact the pound of flesh that we would have done had the matter initiated in this Court, i.e., it did not punish the respondent to the extent we think required." 389 Md. at 564–65, 886 A.2d at 625–26. Although that is not the proper test, I

believe that, as it has done in *Weiss* and *Whitehead,* the majority has applied just that test in this case.

I dissent.